Roynell JOSHUA, et al.,
Petitioners-Appellants,

v.

Ross MAGGIO, Jr., Warden et al.,
Respondents-Appellees.

No. 81–3547
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 26, 1982.

Roynell Joshua, Quentin Joshua, Robert P. Gaines, pro se.

John H. Craft, Asst. Dist. Atty., New Orleans, La., for respondents-appellees.

Before GEE, GARZA and RANDALL, Circuit Judges.

PER CURIAM:

Appellants, Roynell Joshua, Quinton Joshua, and Robert Gaines, were convicted of armed robbery and attempted second degree murder on June 6, 1976. All three appealed their convictions to the Louisiana Supreme Court. That court affirmed their convictions without opinion on January 10,

1978. *State v. Gaines,* 353 So.2d 1033 (La. 1978). Thereafter, appellants unsuccessfully sought habeas corpus relief in the trial court and finally in the Louisiana Supreme Court. *State ex rel. Joshua v. Blackburn,* 391 So.2d 458 (La.1980). The three appellants then filed separate applications for relief pursuant to 28 U.S.C. § 2254 in federal district court. The three separate actions were ordered consolidated, and on August 28, 1981, the United States magistrate recommended that the petitions be denied. On the same day, the district court entered its order adopting the magistrate's report and denying relief. Final judgment dismissing the appellants' petitions was entered on August 31, 1981. All issues presented herein were presented to the Louisiana Supreme Court either on direct appeal or in appellants' habeas corpus petitions to that court. State remedies have therefore been exhausted as required by 28 U.S.C. § 2254.

■ In the district court and again here on appeal, appellants first contend that their arrest was not supported by probable cause and that the subsequent seizure of evidence was violative of the fourth amendment. The district court found that a motion to suppress the evidence had been heard and denied by the state trial court and that the question had been presented to the Louisiana Supreme Court. We find these findings to be supported by the record. The hearing on the motion to suppress reveals that only Gaines' attorney appeared. However, all appellants presented this issue on direct appeal and in the state habeas petition. We agree with the district court's finding that appellants' full litigation of their fourth amendment claims before the state courts precludes federal habeas relief.

In *Stone v. Powell,* 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976), the Supreme Court held that where the state has provided an opportunity for full and fair litigation of a fourth amendment claim, a state prisoner may not be granted federal habeas relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. We have recently reiterated that:

The opportunity to present a fourth amendment claim to the state trial and appellate courts, whether or not that opportunity is exercised or proved successful, constitutes "an opportunity for full and fair consideration" of a defendant's fourth amendment claim under *Stone* absent sufficient factual allegations and proof that the state process is "routinely or systematically applied in such a way as to prevent the actual litigation of fourth amendment claims on the merits."

*Smith v. Maggio,* 664 F.2d 109, 111 (5th Cir. 1981), *quoting Williams v. Brown,* 609 F.2d 216, 220 (5th Cir. 1980). Appellants here do not demonstrate that actual litigation of their fourth amendment claims was somehow precluded in the Louisiana state courts, and we find that Louisiana afforded appellants the opportunity for a full and fair consideration of their claims.

■ Appellants' second contention is that their arrests on charges of aggravated battery and attempted kidnapping were unlawful because they were tainted by an unconstitutionally suggestive identification procedure. A brief synopsis of the underlying facts is necessary to put the appellants' claim in context. Appellants were initially placed under arrest at a shopping center after a fight with police. Police testified that they were placed under arrest because they fit the descriptions of persons wanted for attempted murder and armed robbery specified in a contemporaneous police broadcast. The appellants, together with a juvenile who was later tried and acquitted in separate proceedings, were taken to Charity Hospital in New Orleans for treatment of injuries received while fighting police. While at the hospital, the appellants and the juvenile were presented for identification to Patty Scott and Mike Woods, victims of an armed robbery and street attack who were also being treated at the hospital for injuries received. Scott and Woods, two 16-year-olds, had been assaulted and robbed by three adults and a juvenile one hour and forty-five minutes earlier. Scott had been stabbed in the back in an attempted abduction, and Woods had also

been injured by their knife-wielding assailants. Scott positively identified appellants Gaines and Joshua at the showup and during the later suppression hearing and trial. Woods positively identified all three appellants at the showup and suppression hearing.

We agree with the district court that the appellants were incorrect in relying on the fourth amendment in attacking the identification procedure used at the hospital. We find, however, that the identification procedure used here was impermissibly suggestive. As we noted in *Passman v. Blackburn*, 652 F.2d 559, 573 (5th Cir. 1981), "It is an understatement to say that 'the practice of showing suspects singly to persons for the purpose of identification ... has been widely condemned.'" *Quoting Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). We have no doubt that under the totality of circumstances, the confrontation here was unduly suggestive.

This being so, then, as in *Passman* we must next consider what indicia of reliability the identification here contains. Reliability factors identified in *Passman* are: (1) the opportunity to view, (2) the degree of attention, (3) the accuracy of the description, (4) the witness' level of certainty, and (5) the time between the crime and the confrontation. *Id.* at 573–74. Applying these factors to the identification here leads us to conclude that despite the impermissibly suggestive nature of the showup, we cannot say that there is a substantial likelihood of irreparable misidentification.

Both Scott and Woods had good opportunity to view their assailants during the street confrontation. Scott observed Gaines and Roynell Joshua at the scene of the crime under a street light for two minutes. She was face to face with her own assailant Robert Gaines, and one foot from Woods' assailant, Roynell Joshua. Woods also viewed the appellants for about two minutes under a street light. Woods viewed his assailant, Roynell Joshua, face to face and Scott's assailant, appellant Gaines, from about 15 feet. He observed Quinton Joshua as the driver of the vehicle. The victims clearly had a good opportunity to view their assailants, although the time was short. The testimony of both victims also evidences a high degree of attention during the time of the crime. Both were physically mistreated and threatened with death. They were not casual bystanders but focused their attention on their assailants. *See Passman*, 652 F.2d at 573. Both victims' detailed and consistent descriptions of their assailants suggest the accuracy of their descriptions. Before the showup, Scott had given a detailed description of the assailants. One was tall and thin with a small nose, crooked teeth, hair close to the scalp with medium brown skin, brown eyes, and dressed in white jeans and a yellow-brown shirt. One assailant was described as being five foot seven inches tall, medium build, with long hair. Her assailant was described as a tall, thin man with chipped teeth in the front, and the other assailant was described as having a scarred face and long hair. Woods described his assailant, Roynell Joshua, as having a pink and brown shirt and wiry hair. He described the driver, Quinton Joshua, as wearing a white knit cap with two little balls hanging from it. The details of the descriptions indicated a high degree of attention and substantially fit the appellants' appearances at the time. Both victims also evidenced a high degree of certainty in their identifications. Scott immediately picked Gaines, her assailant, and Roynell Joshua as Woods' assailant. Woods immediately picked out the three appellants. They made positive identifications at the showup and at the hearing. They never identified anyone else as their assailants. Finally, the time between crime and the confrontation was only two hours, scarcely enough time to affect the reliability of the identification. *See Passman*, 652 F.2d at 574.

In light of the foregoing, we conclude that, in the totality of the circumstances, the ability of the victims to make an accurate identification was not outweighed by the corrupting effect of the showup. The victims' identification of the appellants pro-

vided probable cause for their "second" arrest at the hospital. Appellants' other claims are entirely frivolous and merit no discussion.

AFFIRMED.