**UNITED STATES ex rel. Marion KOWAL, Petitioner,**

v.

**The ATTORNEY GENERAL OF the STATE OF ILLINOIS, Respondent.**

**No. 82 C 3132.**

United States District Court, N.D. Illinois, E.D.

Oct. 26, 1982.

---

Terry A. Ekl, Chicago, Ill., for petitioner.

Tyrone C. Fahner, Atty. Gen., State of Ill. by Ellen M. Flaum, Asst. Atty. Gen., Chicago, Ill., for respondent.

## MEMORANDUM AND ORDER

BUA, District Judge.

Marion Kowal ("petitioner") was convicted of retail theft and sentenced to three years imprisonment on November 12, 1980, in the Circuit Court of DuPage County. Prior to his sentencing, he moved for a new trial on the basis of newly discovered evidence and ineffective assistance of counsel. After a hearing, the trial court denied the motion and the Illinois Appellate Court affirmed. *People v. Marion Kowal,* 100 Ill. App.3d 1199, 57 Ill.Dec. 812, 429 N.E.2d 929 (1981). The Illinois Supreme Court denied a petition for leave to appeal, after which petitioner filed this writ of habeas corpus. The state, through the office of the Attor-

ney General, has filed a motion to dismiss. This Court's jurisdiction rests upon 28 U.S.C. § 2254.

In this proceeding, petitioner essentially renews his state court claims asserting that: 1) his conviction was procured through the use of allegedly perjured testimony thus constituting a violation of the due process clause of the Fourteenth Amendment; 2) he was denied his fundamental due process rights when the trial court invoked the doctrine of due diligence to deny his motion for a new trial, and; 3) his attorney's failure to investigate the scene of the crime constituted ineffective assistance of counsel.

The record discloses that on the evening of November 12, 1979, petitioner was arrested outside the Yorktown Shopping Center by two Lombard police officers, Alan Mollsen and Steven Skultety. On June 4, 1982, a hearing was held on a motion to quash the arrest and to suppress evidence, at which time both officers testified as to the events leading up to the arrest.

The officers were on a surveillance detail looking for a rape suspect. Mollsen was positioned on the second floor roof of the Yorktown Shopping Center observing the parking lot through a pair of binoculars, while Skultety was stationed in an unmarked car below. The two maintained contact with one another through a two-way radio.

Mollsen stated that sometime between 8:00 and 9:30 P.M. petitioner pulled his vehicle into the parking lot and parked some seventy feet away in an angular position. Mollsen observed petitioner empty merchandise from a brown paper bag into his trunk, re-roll the top of the bag and carry it with him into the shopping center. Petitioner returned to his vehicle some ten minutes later carrying the same bag and repeating the same procedure. By this time Mollsen had notified Skultety that a professional booster[1] was working the area and

requested that Skultety move into the immediate vicinity. Petitioner re-entered the store a second time carrying the bag with him.

Skultety, from some twenty-five feet away, observed petitioner exit the store carrying a brown re-enforced paper bag with tape along the edges. Upon reaching his vehicle, petitioner threw the bag on the rear seat, got into his vehicle and began driving away. With the aid of the Lombard police, Skultety stopped petitioner some 150 feet away. As he approached petitioner's vehicle, Skultety noticed various items of merchandise on the rear seat for which petitioner could not produce any receipts. A local merchant was called out to the car and verified that the merchandise was stolen. Petitioner was then placed under arrest.

Following arguments from both sides, the trial judge denied petitioner's motion to quash the arrest and suppress evidence. Thereafter, on August 21, 1980, a jury returned a verdict of guilty on two counts of retail theft. Before his sentencing, petitioner obtained additional counsel, who moved for a new trial based upon newly discovered evidence and ineffective assistance of counsel. At the hearing, petitioner attempted to establish that the pre-trial and trial testimony of Officers Skultety and Mollsen was perjurous. In support of this claim, petitioner sought to introduce newly discovered evidence consisting, in part, of a videotape reconstruction of the crime scene which petitioner alleged would demonstrate that some of the claimed observations of Skultety and Mollsen were physically impossible. The trial judge[2] refused to consider the tape as newly discovered evidence, finding that petitioner had failed to exercise due diligence to obtain this evidence prior to or at trial. Additionally, the trial judge found the tape would only impeach and discredit one of the witnesses and not

---

1. This is a form of shoplifting with which both officers were well acquainted. It is characterized by the use of a large brown paper bag, reinforced with tape, making it appear full when empty.

2. Judge Henniger presided over the trial as well as the pre-trial and post-trial hearings.

materially effect the outcome of trial.[3] The Illinois Appellate Court affirmed on both grounds. After a careful examination of the record, this Court concludes that petitioner has failed to state a claim warranting habeas relief.

### Perjured Testimony

Petitioner contends that his conviction was procured through the use of perjured testimony. In support of this claim, he maintains, as he did in the state courts, that newly discovered evidence demonstrates that certain portions of the pre-trial and trial testimony of Officers Mollsen and Skultety were perjurous. Specifically, this evidence allegedly indicates: 1) Mollsen's ability to view petitioner's trunk from the second floor roof of the shopping center was physically impossible; 2) contrary to Skultety's testimony, brown paper bags were distributed by the store from which petitioner had exited preceding his arrest; 3) even with the aid of a high powered lens, Skultety could not have seen any tape on the top of the bag which petitioner used to carry the stolen merchandise. It is petitioner's contention that consideration of this evidence would have resulted in acquittal upon re-trial.

■ For petitioner to prevail on a perjured testimony claim, he must establish that perjured testimony was knowingly and intelligently introduced at trial by the prosecuting authorities. *United States ex rel. Burnett v. Illinois,* 619 F.2d 668, 674 (7th Cir.), *cert. denied,* 449 U.S. 880, 101 S.Ct. 229, 66 L.Ed.2d 104 (1980). See *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *United States ex rel. Wilson v. Warden Cannon,* 538 F.2d 1272 (7th Cir. 1976). The Court does not believe that petitioner has made the required showing.

■ As a threshold matter, this Court must dispose of one of respondent's arguments in support of his motion to dismiss,

namely that petitioner failed to show knowing or intentional use of perjured testimony *by the prosecution.* Respondent argues that the alleged use of perjured testimony on the part of the officers alone is not sufficient to support petitioner's claim, where there is no allegation of knowledge of that use on the part of the attorneys. In reply, petitioner contends that knowing use on the part of the prosecutor need not be shown here where the claim is against agents of the state. A review of the case law, as well as simple logic, dictates that petitioner is correct.

A due process claim will lie where there has been knowing use of perjured testimony on the part of the "prosecuting *authorities.*" *United States v. Jakalski,* 237 F.2d 503, 504–505 (7th Cir.1956) *citing Mooney v. Holohan,* 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935) (emphasis added), *cert. denied,* 353 U.S. 939, 77 S.Ct. 817, 1 L.Ed.2d 761 (1957). As law enforcement officers, Mollsen and Skultety are members of the prosecuting team. It is sufficient to allege that these officers were representatives of the state, as petitioner has done. "[A] constitutional due process claim is not defeated merely because the prosecuting attorney was not personally aware of the [alleged] prosecutorial activity," *Schneider v. Estelle,* 552 F.2d 593, 595 (5th Cir.1977).

■ Turning to the issue of whether perjured testimony was in fact introduced at trial, this Court concludes that the challenged evidence was not perjurous at all. At best the testimony merely discredits the officers' observations. Indeed, the state trial court, with which the Illinois Appellate Court concurred, found the evidence was collateral, tending "at most to contradict, discredit or impeach the testimony of the officers and does not establish perjury on their part." *People v. Marion Kowal,* 100 Ill.App.3d 1199, 57 Ill.Dec. 812, 429 N.E.2d 929 (1981). These state court findings are entitled to a presumption of correctness es-

---

**3.** Though the trial judge did not view the tape, an offer of proof was made in which a private investigator and electronic technician testified describing the production and results of the film.

pecially where, as here, they are based on the same record now before this court. 28 U.S.C. § 2254(d); *Sumner v. Mata,* 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981); *United States ex rel. Jones v. Franzen,* 676 F.2d 261, (7th Cir.1982). This Court's only inquiry, therefore, is whether the state's findings "are fairly supported by the record." 28 U.S.C. § 2254(d)(8). A careful review of the record indicates the state court's findings were indeed amply supported. Moreover, this Court is convinced that there exists no set of facts to support a claim of knowing use of perjury.[4]

■ Petitioner first attempts to impugn the pre-trial and trial testimony of Officer Mollsen. Petitioner contends that Mollsen, while positioned on top of the second floor roof of the shopping center could not possibly have observed items in the trunk of petitioner's vehicle given the angle at which the vehicle was parked and the absence of trunk lights. The only evidence offered in support of this claim is the testimony of Robert Griffiths, an electronics technician who filmed a reenactment of the incident. From the ground floor of the building over which Mollsen was positioned, Griffiths stated that the lighting impaired his visibility of petitioner's vehicle. It was Griffiths' opinion that had he been on top of the building, he would not have seen anything, "much less a silhouette." (C–456).

This evidence falls far short of rendering Officer Mollsen's testimony perjurous. A showing of perjury requires some "palpable testimonial contradiction or untruth." *Anderson v. United States,* 403 F.2d 451, 454 (7th Cir.1968), *cert. denied* 394 U.S. 903, 89 S.Ct. 1009, 22 L.Ed.2d 215 (1969). This evidence only draws into question the officer's ability or inability to discern petitioner's activity in and around his trunk. It does not prove a knowing falsehood. Furthermore, it is difficult to conceive of how this evidence may be characterized as "newly discovered" or how it would have added to petitioner's case. At petitioner's pre-trial suppression hearing, Mollsen was subject to a vigorous cross examination probing his ability to observe petitioner's trunk.[5]

■ Next petitioner attacks Officer Skultety's testimony in which Skultety asserted that no store in Yorktown supplied the kind of bag which petitioner used to carry out his shoplifting spree. Petitioner offered the testimony of private detective John Veyette, who stated that brown paper bags similar to that carried by the petitioner were distributed by the Woolworth's store from which petitioner had exited prior to his arrest.

This Court fails to see how this evidence manifests a "palpable contradiction." Viewed in the context in which it was asked (C–213), Skultety was simply claiming that no markings were on the bag which petitioner carried out from the Woolworth's store and, to his knowledge, the Woolworth's store marks its bags with its name. (C–245). This testimony was corroborated

---

4. The rule requiring this Court to find that there exists no set of facts which would warrant habeas relief seems applicable only to pro se litigants whose complaints must be accorded liberal construction. *See Burnett, supra,* at 674; *United States ex rel. Curtis v. Illinois,* 521 F.2d 717, 721 (7th Cir.), *cert. denied* 423 U.S. 1023, 96 S.Ct. 465, 46 L.Ed.2d 397 (1975). Though petitioner is not a pro se litigant, this Court finds his complaint fatally defective even under the liberal construction rule.

5. Pertinent here were the questions of petitioner's trial counsel put to Mollsen during cross examination:

Q And then would it be fair to say [that petitioner's vehicle] would not be directly toward you, but the vehicle was parked at what I would describe as a 40 or 45 degree angle?

A It is on an angle. I wouldn't know what the degree was.

\* \* \* \* \* \*

Q Was there any lights, trunk lights that you observed at the time it was opened?

A No, sir.

\* \* \* \* \* \*

Q Now, the first time that he emptied out the bag or emptied—took something from the bag, you want to describe that as merchandise also?

A Yes, sir. Appeared to be clothing. Clothes type stuff.

Q But you couldn't observe what that was from your vantage point; is that correct?

A Other than multi colors, no, sir.

by Mr. McNorton, manager of the Woolworth's store. (C–363). If anything, petitioner's evidence shows that Skultety was perhaps mistaken on a relatively minor point. Habeas relief is not warranted where all that has been shown is that a "witness was mistaken and his testimony incorrect." *United States ex rel. Williams v. Walker,* 535 F.2d 383, 388 (7th Cir.1976).

■ Finally, petitioner claims that Skultety committed perjury when he claimed to have seen tape along the top edge of the bag. According to the testimony of Robert Griffiths, a video-tape reconstruction of the crime scene confirms that Skultety, while positioned in his car some twenty feet away, could not have seen tape on the bag, even with the use of a high powered lens. This evidence also does not support a claim of knowing use of perjury.

The precise conditions under which Skultety's observations were made could never be reproduced. So many factors would have to be taken into account that a court cannot rightfully conclude that a video-tape reconstruction of a crime scene taken some ten and a half months after the crime, proves that this witness was lying. At best, this evidence would only contradict Skultety's testimony, but it does not prove perjury.

Before turning to petitioner's second claim, this Court must clarify some confusion in connection with petitioner's charge of perjury. The petition for a writ of habeas corpus, in addressing the latter charge, solely attempts to assert a claim under the due process clause of the Fourteenth Amendment. In his brief in support of his petition, however, Kowal apparently adds the Fourth Amendment as a second ground for relief. Petitioner states that the error of the trial court was its failure to consider "newly discovered evidence which sheds a completely different light upon the testimony of the officers, but more important [sic], *probable cause.*" (Petitioner's Response Brief at 2, emphasis added). Additionally, he later claims that "the Fourth and Fourteenth Amendments have never overlooked the means by which an arrest and search was [sic] achieved." (*Id.* at 6.) To the extent that petitioner has attempted to state a claim based on the Fourth Amendment, his charge presumably arises from the fact that nearly all the alleged perjurous testimony was elicited during his pretrial hearing to quash the arrest and suppress evidence.[6] Petitioner's attempt to cast his claim in Fourth Amendment terms would not alter the result reached above. Petitioner must still establish that perjured testimony was in fact elicited, and this he has failed to do.

■ Allegations that perjured pre-trial testimony supported a finding of probable cause would appear to be governed by the rule enunciated in *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). *Franks* held that the Fourth Amendment requires a hearing where the defendant makes a substantial preliminary showing that deliberate falsehoods were included by an affiant in a warrant affidavit. 438 U.S. at 155–156, 98 S.Ct. at 2676. Petitioner did not assert his right to a *Franks* hearing nor does he here. In any event, since this court has found no set of facts supporting a due process claim based on perjured testimony, it also finds that petitioner has fallen far short of making the substantial preliminary showing required by *Franks* to make out a Fourth Amendment claim.[7]

Finally, this Court notes that petitioner's failure to prove perjury on the part of the officers makes it unnecessary for this Court

---

**6.** Only Mollsen's claim that he observed the items in the rear of petitioner's trunk was made at both the trial and the pre-trial hearing.

**7.** Moreover, by fairly characterizing petitioner's claim as an attempt to relitigate the Fourth Amendment issues in this case, this Court is precluded from reviewing the merits of that claim absent a showing that petitioner was denied a full and fair opportunity to litigate it in the state courts. *Stone v. Powell,* 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067; *Joshua v. Maggio,* 674 F.2d 376, 377 (5th Cir. 1982); *United States ex rel. Maxey v. Morris,* 591 F.2d 386, 390 (7th Cir.), *cert. denied* 442 U.S. 912, 99 S.Ct. 2828, 61 L.Ed.2d 278 (1979).

to address the materiality of this evidence in relation to petitioner's conviction. *See Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

### Due Diligence

 Petitioner's next claim is that his fundamental due process rights were violated when the trial court declined to view the video-tape reconstruction of the crime scene (i.e. newly discovered evidence) on the ground that trial counsel failed to exercise due diligence in ascertaining this evidence before trial. While it may be inappropriate to apply a due diligence standard where the evidence adduced purports to establish a constitutional violation[8], this Court need not address that issue here. First of all, it has already been concluded that there is no support for petitioner's charge of perjury, and thus the exclusion of the challenged evidence could not establish a constitutional violation. Secondly, even if this were not the case, a careful review of the record indicates that petitioner's newly discovered evidence was *not* barred from review in the state courts on the basis of an improper standard.

The record indicates that the trial court's refusal to consider defendant's newly discovered evidence was not solely influenced by the lack of due diligence, but rather was based in substantial part on the nature of the evidence itself. The trial court found this evidence to be useful only as to collateral matters (i.e. impeaching or discrediting the officers' testimony). A review of the record confirms that finding (see Section I, *supra.*) Due diligence aside, therefore, this evidence simply would not warrant the granting of a new trial. *See Mesarosh v. United States*, 352 U.S. 1, 9, 77 S.Ct. 1, 5, 1 L.Ed.2d 1 (1956).

Moreover, petitioner made an offer of proof through the testimony of Veyette and Griffiths regarding the video-tape reconstruction of the crime scene. Both of these witnesses were able to provide a detailed account of the film, explaining how it was made and what it revealed. The Illinois Appellate Court considered this evidence and upheld the trial court's conclusion that it did not afford a sufficient basis for a new trial. This Court finds no merit, therefore, in petitioner's contention that the doctrine of due diligence "prevented at least the consideration of due process violations." (Petitioner's response brief at 7.)

### Ineffective Assistance of Counsel

Finally, petitioner claims that trial counsel's failure to investigate the scene of the crime prejudiced his interests at trial and, therefore, constituted a denial of his constitutional right to effective assistance of counsel. Whether an investigation was ever conducted is not clear from the record. In any event, this Court finds that petitioner was afforded effective assistance of counsel as contemplated by the Sixth Amendment.

 The right to effective assistance of counsel guarantees one a minimum standard of professional representation. *United States ex rel. Williams v. Twomey*, 510 F.2d 634, 640 (7th Cir.) *cert. denied* 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975). Whether that standard has been met requires an examination of the totality of the circumstances. *United States v. Phillips*, 640 F.2d 87, 92 (7th Cir.), *cert. denied*, 451 U.S. 991, 101 S.Ct. 2331, 68 L.Ed.2d 851 (1981). The presumption is that effective assistance was rendered and the burden rests with the defendant to prove the contrary. *United States v. Fleming*, 594 F.2d 598 (7th Cir.) *cert. denied*, 442 U.S. 931, 99 S.Ct. 2863, 61 L.Ed.2d 299 (1979); *Matthews v. United States*, 518 F.2d 1245, 1246 (7th Cir.1975).

---

8. *See Marshall v. United States*, 436 F.2d 155 (D.C.Cir.1970), holding that where an accused claims a constitutional infirmity in his conviction, the doctrine of due diligence should not be imposed to defeat consideration of newly discovered evidence which would support that claim. This circuit has agreed with that position at least "as a general principle." *United States v. Hedgeman*, 564 F.2d 763, 768 (7th Cir.1977), *cert. denied* 434 U.S. 1070, 98 S.Ct. 1253, 55 L.Ed.2d 773 (1978).

Additionally, defendant must show that counsel's failure prejudiced the presentation of his defense. *See United States v. Raineri,* 670 F.2d 702, 712 (7th Cir.1982); *United States v. Berkwitt,* 619 F.2d 649, 659 (7th Cir.1980). The thrust of petitioner's claim is that had trial counsel investigated the scene of the crime, he would have discovered that the officers claimed observations were physically impossible. From this presumption, petitioner reaches the conclusion that the outcome of his trial would "probably have been different." The state trial court, however, did not believe that such evidence would have materially effected the outcome of the case. (C–439). Likewise, the Illinois Appellate Court was unconvinced that the outcome of the suppression hearing and trial itself would have been altered had trial counsel conducted the exhaustive investigation carried out by appellant counsel. These findings are properly accorded a strong presumption of correctness where, as here, they are based upon a review of the same record now before this Court. For example, in *United States ex rel. Heral v. Franzen,* 667 F.2d 633 (7th Cir.1981), a case substantially similar to the case before this Court, the petitioner contended that counsel's failure to disclose certain information to the trial judge constituted ineffective assistance of counsel. The state trial court and appellate court found that counsel's action did not affect the outcome of the case. In denying petitioner habeas relief, the Seventh Circuit placed great weight on these findings, stating:

> "Where we are asked by habeas corpus petitioner to review a state court fact determination that was based on an examination of the same record as is before us, we are required to afford considerable deference to the state court determination. *Sumner v. Mata,* 449 U.S. 539, 547 [101 S.Ct. 764, 769, 66 L.Ed.2d 722] (1981). [The petitioner] has failed to prove by convincing evidence, as required by 28 U.S.C. § 2254(d) (1980), that the factual determination by the state court was clearly erroneous." *Id.* at 636.

Similarly, this Court finds that petitioner has failed to carry the heavy burden necessary to overcome the presumption of correctness to which these findings are entitled.

First of all, a review of the record reveals that trial counsel did indeed attack the reliability of the officers' claimed observations. At the pre-trial hearing, both officers were subjected to generally vigorous cross examination concerning their ability to view clearly the inside of petitioner's trunk and the characteristics of the booster bag which petitioner carried to and from his vehicle. Trial counsel apparently abandoned this strategy at trial and during cross examination did not focus principally upon the officers' ability or inability to view the scene. Given the fact that stolen items of merchandise and a booster bag, which were found in petitioner's possession and which the officers claimed to have observed, were admitted into evidence, counsel's failure to challenge the veracity of the officers observations cannot be condemned. It is unlikely, therefore, that evidence disputing the officer's observations, would have changed the result in this case.

Furthermore, effective assistance of counsel "is measured by the totality of the circumstances ... and not an isolated failure." *United States v. Raineri,* 670 F.2d 702, 712 (7th Cir.1982). Here the record shows that counsel for petitioner moved to quash the arrest and suppress evidence, filed pre-trial motions, conducted cross and re-cross examinations, and made timely objections to questions and admission of evidence. This performance is more than satisfactory to defeat petitioner's Sixth Amendment claim. *Cf. United States v. Phillips,* 640 F.2d 87, 92 (7th Cir.), *cert. denied* 451 U.S. 991, 101 S.Ct. 2331, 68 L.Ed.2d 851 (1981). Though an attorney's duty to prepare and investigate his client's case cannot be taken lightly, that duty is "far from limitless." *Washington v. Watkins,* 655 F.2d 1346, 1356 (5th Cir.1981), *cert. denied* —— U.S. ——, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982). Failure to conduct the kind of detailed investigation carried out by appellate counsel did not render trial counsel's performance ineffective in light of the totality of the circumstances.

For the foregoing reasons, respondent's motion to dismiss is granted and the petition for a writ of habeas corpus is denied.

IT IS SO ORDERED.