**Fletcher Thomas MANN, Plaintiff,**

**v.**

**James A. LYNAUGH, Director, Texas Department of Corrections, Defendant.**

**No. CA 3–87–1548–R.**

United States District Court, N.D. Texas, Dallas Division.

Oct. 20, 1987.

Melvyn Carson Bruder, Dallas, Tex., for plaintiff.

Jim Mattox, M.F. Keller, F.S. McCown, W.C. Zapalac, Austin, Tex., for defendant.

## MEMORANDUM OPINION

BUCHMEYER, District Judge.

This is a death penalty case.

The petitioner, Fletcher Thomas Mann, raises four issues by his petition for writ of habeas corpus under 28 U.S.C. § 2254. The first is that "several jurors" were excluded in violation of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed. 2d 776 (1968). The remaining three contentions involve the confession which was given by Mann to two police officers and which was introduced at the state court trial over Mann's objections.

All the petitioner's claims are baseless. Accordingly, for the following reasons, the petition for writ of habeas corpus is denied.

## 1. THE FACTUAL BACKGROUND

On Thursday, September 11, 1980, the petitioner Mann and Martin David Verbrugge (i) raped Barbara Hoppe and then strangled and stabbed her to death; (ii) shot and killed Christopher Bates; and (iii) attempted to murder Robert Matzig by shooting him in the neck and leaving him for dead. Since the "gruesome facts" concerning these crimes are recited in *Mann v. State*, 718 S.W.2d 741 (Tex.Crim.App.1986), they need not be repeated here.

## 2. THE PROCEDURAL HISTORY

On November 8, 1981, over one year after the commission of these crimes, the petitioner Mann was indicted for the murder of Christopher Bates. He was tried in

January of 1982. The district judge, the Honorable Ron Chapman, conducted a pretrial hearing on Mann's motion to suppress his confession (S.F. 35–320)—and denied this motion because "the confession was freely and voluntarily given"; because it "was not tainted in any way by any conduct of any law enforcement officer" and because it was obtained from Mann when "he was voluntarily willing to talk and was not requesting an attorney" (S.F. 320–21).[1]

On February 4, 1982, the jury found Mann guilty of capital murder. On the following day, the jury gave affirmative answers to the three special punishment issues submitted to them under Art. 37.071, Tex.Code Crim.Proc. (Vernon Supp.1987). And, on February 5, 1982, Judge Chapman ordered that Mann be executed by lethal injection (S.F. 130–34).

Mann appealed. On October 22, 1986—six years after the murders, 4 years and 9 months after the trial—the Texas Court of Criminal Appeals affirmed the conviction and the sentence. *Mann v. State*, 718 S.W. 2d 741 (Tex.Crim.App.1986). Mann's petition for writ of certiorari was denied by the United States Supreme Court on April 6, 1987. (—— U.S. ——, 107 S.Ct. 1633, 95 L.Ed.2d 206 (1987)).

Mann's execution was scheduled for June 25, 1987. On June 16, 1987, he filed an application for stay and application for writ of habeas corpus in the state court. On June 17, 1987, Judge Chapman denied the request for stay and recommended that the petition for habeas corpus be denied.[2] The Texas Court of Criminal Appeals accepted this recommendation, and denied mann's application on June 23, 1987.

On the same day, June 23, 1987, Mann filed a petition for writ of habeas corpus in this Court. The State of Texas *did not* oppose Mann's request for a stay of execution, and this was granted on June 23, 1987. Several weeks later, this Court received the voluminous state court record.

---

1. Mann did not present any evidence during trial to attempt to show that his confession was not voluntary (S.F. 321; Tr. 124–28). See Art. 38.22, Tex. Code Crim. Proc. (Vernon Supp. 1987).

2. Judge Chapman did not hold another hearing on Mann's contention that his confession was not voluntary; instead, he relied upon the testimony presented at the lengthy pretrial hearing on Mann's motion to suppress the confession (S.F. 35–321).

On July 28, 1987, the state filed its answer to the petition and its motion for summary judgment. No response was filed to this motion for summary judgment within 20 days, Local Rule 5.1(e), so the matter became ready for dispositon on August 17, 1987.

## 3. THE ISSUES

By his petition for writ of habeas corpus, Mann raises the following issues:

(a) That prospective jurors were improperly excluded from the jury based on their beliefs about the propriety of the death penalty, in violation of the Fourteenth Amendment.

(b) That his confession should have been suppressed because:

(i) it was obtained as a result of an unlawful arrest, in violation of the Fourth and Fourteenth Amendments;

(ii) it was obtained by use of coercion on the part of interrogating police officers, in violation of the Fifth, Sixth, and Fourteenth Amendments;

(iii) it was obtained in violation of his "rights to silence and to counsel" guaranteed by the Fifth, Sixth, and Fourteenth Amendments.

Mann raised the first three of these issues in his petition for writ of habeas corpus in state court, and the fourth issue was presented in the direct appeal of his conviction. *Mann,* 718 S.W.2d 741. Thus, he has exhausted his state remedies on all four claims, as required by 28 U.S.C. § 2254(b).

## 4. THE APPLICABLE LAW

In all habeas corpus proceedings instituted by state prisoners under 28 U.S.C. § 2254, the federal district and appellate courts are bound by the provisions of § 2254(d)—which provide, in substance, that the findings of the state court "shall be presumed to be correct," and that the petitioner has the burden of establishing that the factual determinations of the state court are "clearly erroneous." *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed. 2d 722 (1981); *Asper v. Estelle,* 709 F.2d 356 (5th Cir.1983).

The "factual determinations" covered by § 2254(d) are "basic, primary or historical facts: facts in the sense of a recital of external events and the credibility of their narrators." *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), quoting *Brown v. Allen,* 344 U.S. 443, 506, 73 S.Ct. 397, 446, 97 L.Ed. 469 (1953) (opinion of Mr. Justice Frankfurter); *Mason v. Balcom,* 531 F.2d 717, 721–23 (5th Cir. 1976). Thus, if a state court has made specific findings of fact or crediblity determinations, these are binding upon a federal court in a subsequent habeas proceeding unless the federal court concludes—not with a "boilerplate" dismissal, but with "some reasoned written references to § 2254(d) and the state court findings"— that the findings or credibility determinations are clearly erroneous. *Sumner v. Mata,* 449 U.S. at 549–52, 101 S.Ct. at 770–72; *Smith v. Phillips,* 455 U.S. 209, 218, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982).

Of course, no "presumption of correctness" is due under § 2254(d) if the state court does not make any specific fact findings or credibility determinations—of if the record is incomplete because the material facts were not fully and adequately developed at the state court hearing. *Mason v. Balcom,* 531 F.2d at 721–23; *White v. Finkbeiner,* 570 F.2d 194, 201 (7th Cir. 1978). Nor is any deference due to conclusions of law by a state court. *Cuyler v. Sullivan,* 446 U.S. 335, 341–42, 100 S.Ct. 1708, 1714–15, 64 L.Ed.2d 333 (1980). And, where the resolution of the habeas corpus issue presents a "mixed question of fact and law," the presumption of correctness under § 2254(d) does apply to findings of "specific historical facts" and to specific credibility determinations made by a state court—but it does not apply to the conclusions of law reached by the trial court on the mixed question of fact and law. *Townsend v. Sain,* 372 U.S. 293, 309 n. 6, 83 S.Ct. 745, 755 n. 6, 9 L.Ed.2d 770 (1963); *Lee v. Hopper,* 499 F.2d 456, 462 (5th Cir. 1974).

## 5. EXCLUSION OF JURORS: THE WITHERSPOON CHALLENGE

■ Mann's first contention is that the trial court improperly excluded "several ju-

rors" because of their views about the death penalty. *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980). However, Mann does not identify the persons he claims were wrongly excluded. Presumably he means the four veniremembers discussed in his direct appeal and his petition for certiorari: Janie Mathus, Diana Velasquez, Elmer Holmes, and Martha Tingle.[3] See *Mann,* 718 S.W.2d 746–50.

In essence, Mann complains about the "emotional/intellectual dilemna" caused by some "unnecessarily convoluted" voir dire questions used by the prosecutor. *Mann,* 718 S.W.2d at 747, 749. However, the record relects that the trial judge carefully observed the voir dire proceedings. Indeed, Judge Chapman asked many question of his own during voir dire—including some to three of the jurors involved here—so he would be sure what their answers meant (Mathus—S.F. 664–65; Holmes—S. F. 2678–81; Tingle—S.F. 3108–11). And, the record supports his determination that the prospective jurors *were not* qualified because their views on capital punishment would prevent or substantially impair the performance of their duties as jurors in accordance with their instructions and oath. As stated in *Wainwright v. Witt,* 469 U.S. 412, 424–26, 105 S.Ct. 844, 852–53, 83 L.Ed. 2d 841 (1985):

> "... What common sense should have realized experience has proven; many veniremen simply cannot be asked enough questions to reach the point where their bias has been made 'unmistakably clear'; these veniremen may not know how they will react when faced with imposing the death sentence, or may be unable to articulate, or may wish to hide their true feelings. Despite this lack of clarity in the printed record, however, there will be situations where the trial judge is left

with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law.... *[T]his is why deference must be paid to the trial judge who sees and hears the jurors."* (Emphasis added.)

Judge Chapman saw and heard each of the four jurors in question. In each instance, he found that the person was not qualified to serve because of his or her feelings about capital punishment (Mathus—S.F. 665; Holmes—S.F. 2681–82; Tingle—S.F. 3111). These findings are presumed to be correct; they are subject to § 2254(d); and they are fairly supported by the record.[4] *Wainwright v. Witt,* 469 U.S. at 429, 435, 105 S.Ct. at 854, 857–58.

Therefore, Mann's first point—that unnamed jurors were excused in violation of *Witherspoon*—is baseless.

## 6. MANN'S CONFESSION: UNLAWFUL ARREST

Mann's second claim is that his confession was improperly admitted at trial because it "was obtained as a result of the unlawful arrest of the petitioner, in violation of his rights under the Fourth and Fourteenth Amendments."

■ Under *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), a state conviction is not subject to attack in a federal habeas corpus proceeding on the basis that it resulted from a fourth amendment violation—*if the petitioner had the opportunity to fully and fairly litigate the claim in state court. Wicker v. McCotter,* 783 F.2d 487, 497 (5th Cir.1986), *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3310, 92 L.Ed.2d 723 (1986). In this case, Mann had a lengthy pretrial hearing on his motion to suppress the confession (S.F. 37–213, 268–321). There is no contention that this hearing was not "full and fair," or that

---

3. As noted by the Texas Court of Criminal Appeals, a fifth juror was named in the direct appeal—Charlene Dietrich—but Mann had made no objection at trial to her exclusion. 718 S.W.2d at 746. Accordingly, any objection to the trial court's excusal of Ms. Dietrich was waived. See *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).

4. Under *Wainwright,* it is not necessary that the trial judge make *specific* findings of fact or credibility determinations with respect to the jurors who were excluded. See *O'Bryan v. Estelle,* 714 F.2d 365, at 402–406 (Buchmeyer, District Judge, dissenting).

Mann did not have the opportunity to present all of the evidence he desired, or that the material facts were not fully and adequately developed. Having had the opportunity to have his "unlawful arrest" claim heard in state court, Mann is not entitled to re-litigate this issue in federal court. *Joshua v. Maggio,* 674 F.2d 376, 377 (5th Cir.1982), *cert. denied,* 459 U.S. 992, 103 S.Ct. 351, 74 L.Ed.2d 389 (1982).

■ Moreover, even if Mann's "wrongful arrest" claim were reviewable, it is baseless. Mann does not assert any facts to support his claim that the warrant issued for his arrest was not supported by probable cause. In fact, the affidavits used to obtain the arrest warrant demonstrate that there was probable cause for Mann's arrest. In particular, the affidavits prepared by Dallas Police Officer J.M. Gholston (State's Exhibit A, S.F. 4753) described the details of the offenses for which Mann's arrest was sought, including the date, the location, and the victims' names—and they also stated that Mann had been identified as the murderer by Lee Matzig, one of the victims in the crimes committed by Mann and Verbrugge on September 11, 1980.

Obviously, these affidavits were sufficient to permit the issuing magistrate to determine that probable cause existed to arrest Mann for capital murder. *Johnson v. United States,* 333 U.S. 10, 13–14, 68 S.Ct. 367, 368–69, 92 L.Ed. 436 (1948); *Christian v. McKaskle,* 731 F.2d 1196, 1200 (5th Cir.1984). The arrest of Mann pursuant to the warrant was valid. Therefore, Mann's second point—that his confession resulted from an "unlawful arrest"— is without merit.

### 7. MANN'S CONFESSION: COERCION BY INTERROGATING OFFICERS

■ Mann's third claim is that his confession "was obtained as a result of coercion by interrogating officers, in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments." Specifically, he contends that the:

"confession was obtained after officers had been advised by [Mann's] counsel not to interrogate him, after [his] counsel had been forced to leave the jail where he could monitor the conduct of the police vis-a-vis the petitioner, after [Mann] had been removed from the jail, and after [Mann] had been told by the officers that [his] co-defendant had confessed to the crime and had implicated [Mann]."

These claims are precisely the ones heard by the state trial judge (Chapman) when he held the pretrial hearing on the Mann's motion to suppress the confession (S.F. 35–321). The evidence presented at that hearing was conflicting—so Judge Chapman was required to make credibility determinations and findings concerning the contested facts.

#### The State's Evidence

Detective J.M. Gholston of the Dallas Police Department testified as follows: In June of 1981, he learned that Mann was in custody in Bullit County, Kentucky—on robbery and rape charges unrelated to the Dallas murders—and that he went to Kentucky to arrest Mann and to try to interview him (S.F. 39–40, 118–19). Gholston first met with Mann about 10:00 a.m. on June 19, 1981; gave Mann the *Miranda* warnings; and told Mann he wanted to speak with him after Mann's arraignment (S.F. 40–1).

After the arraignment (at which Mann was given advise of his rights by the judge), Gholston met Sean Delahanty, an attorney who had been appointed to represent Mann on one of the Kentucky charges (S.F. 43). At this time, Gholston told Delahanty he would like to interview Mann. Delahanty said that Mann wanted to speak with Gholston, but that Delahanty would have to be present and ask all of the questions (S.F. 43–44, 67, 118, 176). Gholston rejected these terms (S.F. 44, 67, 118, 176–77).

Later that day, Robbie Popplewell, an investigator with the Bullitt County, Sheriff's Department, took Mann to Louisville, so that a blood sample could be taken from Mann in connection with the rape case being investigated by the Louisville police (S.F. 79, 188). Gholston accompanied Pop-

plewell and Mann on this trip. When Mann got in the car, he began asking Gholston questions about the Dallas murder charges (S.F. 45, 120). Gholston immediately read Mann his Miranda warnings again, asked if he understood them, and Mann said that he did (S.F. 46, 120, 122). During the ride to Louisville, Mann and Gholston had sporadic conversations about general topics, and Mann continued to ask questions about the Dallas investigation (S.F. 46, 82). Gholston told Mann that one of the victims had survived and had identified him, that the police knew the name of his accomplice, and that the accomplice's wife had given an affidavit to the police (S.F. 81, 89–90).

On the way back to Bullitt County, Gholston asked Mann if he had decided whether he wanted to make a statement (S.F. 88). Mann responded by asking whether his mother would have to be involved if he made a statement (S.F. 48, 92). Gholston assured Mann that there was no need to involve his family, and that he (Gholston) would call Dallas police authorities and tell them not to contact Mann's mother (S.F. 49, 92). Gholston testified that his statement that Mann's mother would not have to be involved was simply a response to Mann's question and was not made in exchange for Mann's agreement to give a statement (S.F. 93–94). When they reached the Bullitt County Jail, Gholston did call the Dallas Police Department and, in Mann's presence, told them that Mann's mother was not to be contacted or questioned in the investigation (S.F. 49, 97–99).

After he made this phone call, Gholston asked Mann if he wanted to make a statement (S.F. 49, 99). When Mann said that he did, Gholston again read the *Miranda* warnings and asked Mann if he understood them; Mann repleid "yes" (S.F. 49–50, 99). *Gholston specifically asked Mann if he wanted his attorney present or if he wanted to call his attorney* (S.F. 50–51,

99–100). *Mann replied that he did not* (S.F. 51, 100). Mann then proceeded to give a statement, which Popplewell wrote down in longhand (S.F. 51, 101–02). After the statement was typed, Gholston read the entire document to Mann, including the warnings at the top of the first page (S.F. 52, 106). He asked Mann if the statement was true and Mann stated that it was (S.F. 52, 106). Mann then signed the confession (S.F. 52–3, 106).

Investigator Robbie Popplewell of the Bullitt County Sheriff's Department confirmed the testimony of Officer Gholston. Specifically, Popplewell testified that it was Mann who started asking Gholston questions about the Dallas murders on the way to Louisville; that Gholston stopped Mann and gave him the Miranda warnings; that Gholston again advised Mann of his rights when they were back at the Bullitt County jail; that Mann said he wanted to waive his rights and give a statement; and that Mann said he did not want his attorney to be present when he gave the statement (S.F. 116–26, 134–35).

#### The Petitioner's Evidence

The testimony of the two state witnesses was contradicted by Mann and by Sean Delahanty, the attorney who represented Mann in Kentucky.

Delahanty testified that he repeatedly told Gholston and Popplewell not to talk to his client unless he was present; that he stayed at the Bullitt County Sheriff's Department for several hours because he thought they might try to question Mann during his absence; that he told Gholston it might be possible for him to talk to Mann, but only if Delahanty asked all of the questions;[5] and that after Delahanty left the Sheriff's Department, Gholston and Popplewell did talk to Mann and got him to sign a confession (S.F. 166–205).[6]

---

**5.** When asked what questions he was planning to ask Mann, Delahanty said: "Well, I intended —I had talked to Mann and Mann said, you know, several things that were sort of exculpatory, and I was going to, you know, ask him questions did he ever own a gun, things like that" (S.F. 209).

**6.** Delahanty also testified that, on the day after he gave the confession to Gholston and Popplewell, Mann talked to a reporter who came to the jail—and Mann "confessed to her, too" that he had committed the murders in Dallas (S.F. 204). (See also S.F. 108.)

Mann testified that, during the trip to Louisville, Gholston repeatedly questioned him about the Dallas murders—and that he (Mann) stated each time that he wanted to talk to his attorney (S.F. 272–73). Mann also testified that Gholston told him that the co-defendant had given a statement implicating Mann (S.F. 273). According to Mann, when they returned to the Bullitt County jail, Gholston called authorities in Dallas and told them to arrest Mann's mother because Mann would not cooperate (S.F. 278–79); that Gholston then asked Mann if he would make a statement, but Mann replied that he wanted to speak with his lawyer first (S.F. 281–82); that Gholston said he would call Dallas authorities again, and tell them to leave Mann's mother alone, if Mann would give a statement— and that Mann finally agreed (S.F. 282). However, Mann also testified that no force or coercion was used to obtain his confession, other than the threat to arrest his mother, and that he signed the statement voluntarily (S.F. 288–90).

### The Trial Court's Findings

Faced with this conflicting evidence, Judge Chapman credited the testimony of Officer Gholston and Investigator Popplewell—and discounted the testimony of Mann and his Kentucky attorney, Sean Delahanty. Accordingly, at the conclusion of the hearing, Judge Chapman made these oral findings:

"THE COURT: All right. First off, the Court will observe that all of the testimony establishes that the confession was freely and voluntarily given. Further, it will be the ruling of the Court that the giving of the confession was not tainted in any way by any conduct of any law enforcement officer.

"Further, the Court will find specifically that, under the believable testimony, that [sic] the confession was obtained from the defendant at a time in which he was voluntarily willing to talk and was not requesting an attorney or objecting to being interrogated.

"...

"I'm going to allow the statement to be admitted for the jury's consideration." (S.F. 320–21.)

These findings of fact and conclusions of law were later reduced to writing. (See Exhibit D to the Petition for Writ of Habeas Corpus).

In making these findings, Judge Chapman—in view of the conflicting testimony and arguments presented on the motion to suppress—necessarily found: *that Mann initiated the conversations with Gholston during the trip to Louisville;* that Mann waived his *Miranda* rights after Gholston read them to him; that Gholston's offer to call Dallas authorities about Mann's mother was done to allay Mann's concerns, not to induce or force a confession; that Mann offered to give a statement after Gholston made the phone call to Dallas; that Gholston did not threaten to have Mann's mother arrested; and that Mann specifically waived his right to consult with his attorney or to have him present when the confession was given. See *Marshall v. Lonberger*, 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983) (court is presumed to have implicitly found facts necessary to support its conclusions).[7]

These findings are supported by the record and by the credibility choices made by the trial judge who saw and heard the witnesses. Cf. *Wainwright v. Witt*, 569 U.S. at 424–26, 105 S.Ct. at 852–53. Therefore, although the voluntariness of a confession is a "mixed question of fact and law" in a federal habeas proceeding, *Brantley v. McKaskle*, 722 F.2d 187, 188 (5th Cir.1984), these findings of "specific historical facts" and these specific credibility determinations[8] are binding upon a federal court under § 2254(d). *Miller v. Fen-*

---

7. See also *LaVallee v. Delle Rose*, 410 U.S. 690, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973); *Fay v. McCotter*, 765 F.2d 475 (5th Cir.1985).

8. Mann's attack upon these findings and credibility determinations as "mere boilerplate" is not well-founded. Judge Chapman's findings at the conclusion of the suppression hearing (S.F.

320–21) are not "boilerplate," but are oral comments directed specifically to the confession in this case. Moreover, in the state habeas proceeding, Judge Chapman reaffirmed his findings that Mann's confession was given voluntarily and without coercion.

**1128**

*ton,* 474 U.S. 104, 106 S.Ct. 445, 451, 88 L.Ed.2d 405 (1985); *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *Mason v. Balcom,* 531 F.2d at 721–23.

Accordingly, Mann's third claim—that his confession was coerced by police misconduct—is without merit. See *Connecticut v. Barrett,* 479 U.S. 523, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987); *Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986).[9]

### 8. MANN'S CONFESSION: RIGHTS TO SILENCE AND TO COUNSEL

■ Mann's last claim is that his confession was obtained "in violation of his rights to silence and to counsel" under the Fifth and Sixth Amendments. Specifically, Mann argues that after his arraignment, the police initiated further questioning of him, despite his invocation of his right to silence and his right to speak with his attorney. He also claims that his attorney had instructed the authorities that they could speak with Mann only if the attorney was present and asked the questions. See *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986).

The evidence concerning this claim—and the state court's findings with respect to it—are summarized in the preceding section of this opinion. Basically, Judge Chapman found that Mann did have the opportunity to consult with his attorney following his arraignment in Kentucky; *that Mann himself initiated the conversations with Officer Gholston during the trip to Louisville;* that Officer Gholston immediately warned Mann of his rights; and that Mann waived those rights. Judge Chapman also found that there were no threats or coercion on the part of the police—and that Mann expressly waived the right to consult with his attorney or to have him present when the confession was given (S.F. 320–21.)

These findings establish that there was no violation of Mann's Fifth or Sixth Amendment rights. Mann conceded, at the pretrial hearing, that he understood and appreciated the significance of his rights (S.F. 288–89). And, Judge Chapman's specific finding that there was no police misconduct supports his finding that Mann acted voluntarily in waiving his right to call his lawyer or to have him present during the confession. These findings and credibility determinations are binding under § 2254(d). See *Connecticut v. Barrett,* supra; *Moran v. Burbine,* supra.

Mann's waiver of his "rights to silence and to counsel" was knowing and voluntary. Therefore, Mann's claim that the confession was obtained in violation of his Fifth and Sixth amendment rights is without merit.

### CONCLUSION

Under *Wainwright v. Witt,* 469 U.S. 424–26, 105 S.Ct. at 852–53, deference must be paid to the trial judge who excludes jurors because of their views on capital punishment. Similarly, under § 2254(d), a state judge's findings of specific facts and his credibility determinations are binding unless they are "clearly erroneous."

In this case, Judge Chapman found that the four jurors in question were not qualified because their beliefs on capital punishment would prevent or substantially impair their performance as jurors. In addition, Judge Chapman made credibility determinations and specific findings that mann's confession was "freely and voluntarily given," was not "tainted in any way" by police misconduct, and was obtained when Mann "was voluntarily willing to talk and was not requesting an attorney." Finally, the arrest warrant for Mann was supported by probable cause.

Therefore, Mann's claims are baseless, and the Petition for Writ of Habeas Corpus is DENIED.

---

**9.** See also *Brewer v. Williams,* 430 U.S. 387, 413, 97 S.Ct. 1232, 1246, 51 L.Ed.2d 424 (1977) ("the opinion of the Court is explicitly clear that the right to assistance of counsel may be waived, after it has attached, without notice to or consultation with counsel") (Powell, J., concurring).