**John Henry SELVAGE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 67620.**

Court of Criminal Appeals of Texas, En Banc.

July 11, 1984.

Rehearing Denied Oct. 10, 1984.

Donald W. Rogers, Jr., Houston (court appointed on appeal), for appellant.

John B. Holmes, Jr., Dist. Atty. and Winston E. Cochran, Jr. and Andy Tobias, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

OPINION

W.C. DAVIS, Judge.

This is an appeal from a conviction for capital murder. Punishment was assessed at death.

The record reveals that on July 30, 1979, at approximately 6:15 p.m., Brenda Joseph entered Ventura's Jewelry Store in Houston. Several minutes later, appellant and

Wilbur Kelly[1] entered the store; both carried shoulder bags. Also present in the store at that time were: Stephen Ventura, the store owner; the victim, Harris County Deputy Sheriff Albert Garza;[2] and Charlye Jo Ivy and Ken Roberts, employees of Ventura.

Ventura testified that when appellant, Kelly, and Joseph entered the store, he was uncomfortable because they had been in the store earlier that day and were not regular customers. Ventura further stated that he informed Garza of his apprehension. Ventura then waited on the men while Ivy helped the woman. Garza, apparently in an effort to ensure that the three would cause no trouble, removed his coat and approached the counter in order to display his Deputy Sheriff's badge and his service pistol. Garza then escorted appellant to another section of the display counter in order to wait on him.

Subsequently, Kelly asked Ventura to fill out a layaway order on a ring. To complete this transaction, Ventura and Kelly moved to the section of the counter where appellant and Garza were standing. When Ventura bent over to obtain a layaway sales ticket, he heard a gunshot and Garza fell against him; Ventura did not see who fired the shot. As Ventura retreated to his office to obtain his revolver, he heard more gunshots; he then came out of his office, observed appellant bending over a broken jewelry case and removing the contents, and fired his revolver as he ran to the display section of the store.

Ken Roberts obtained a shotgun from inside the jewelry store, and he and Ventura pursued appellant and Kelly to the parking lot, where a shootout ensued between the four men. Ventura and Roberts testified that appellant and Kelly fired at them during their pursuit.[3] Ventura and Roberts returned to the store where they found that Deputy Garza had been shot in the neck. Neither Roberts nor Ivy saw who shot Garza.

█ In his first ground of error, appellant contends that the charge to the jury at the guilt phase of the trial was fundamentally defective in that it authorized a conviction with respect to count one of the indictment upon a theory not alleged in the indictment.

Count one of the indictment alleged the offense of capital murder pursuant to V.T.C.A. Penal Code Sec. 19.03(a)(2), and stated in pertinent part that:

> ... John Henry Selvage, hereafter styled the Defendant, heretofore on or about July 30, 1979, did then and there unlawfully while in the course of committing and attempting to commit Robbery of *Stephen Ventura*, intentionally cause the death of Albert Garza, hereafter styled the complainant, by shooting the complainant with a gun. (Emphasis added)

The trial court's charge to the jury applied the law to the facts of the case as follows:

> Therefore, if you find from the evidence beyond a reasonable doubt that the defendant, John Henry Selvage, on or about July 30, 1979, in Harris County, Texas, acting alone or as a party as that term has been defined, while in the course of committing or attempting to commit robbery, intentionally caused the death of Albert Garza by shooting him with a gun, you will find the defendant guilty of capital murder.

Appellant argues that he was charged with committing and attempting to commit the robbery of *Stephen Ventura;* therefore, the charge was fundamentally defective as it failed to name the victim of the robbery or attempted robbery. Appellant made no objection to the charge; neither

---

**1.** Appellant and Kelly were later located in New Orleans, Louisiana. Police arrested appellant, and subsequently killed Kelly in a shootout.

**2.** Garza, a friend of Ventura's, had stopped by the store to use the phone. Garza had an affida-vit with him and, as the evidence reveals, was a process server for a district court.

**3.** The State presented five additional witnesses who testified they observed the shootout.

did he request a different or supplemental charge.

In *Sattiewhite v. State*, 600 S.W.2d 277 (Tex.Cr.App.1980) (Opinion on Rehearing), this Court held that a charge on aggravated robbery that did "not include certain details of the underlying offense of theft alleged in the indictment and proved by the State ... is not enough to render it fatally defective. *Trostle v. State*, 588 S.W.2d 925, 930–931 (Tex.Cr.App.1980); *Frank v. State*, 558 S.W.2d 12, 15–16 (Tex.Cr.App. 1977)." Id at 285. This Court further stated that:

> [i]f not otherwise faulty, a charge of the court that requires the jury to find each essential element of the offense charged and comports with the legal theory presented by the State through evidence that proves every factual allegation made in the charging instrument is not fundamentally defective, for the accused has been apprised of everything that due process and due course of law mandate. Id at 285.

Applying the reasoning in *Sattiewhite v. State*, supra, we first recognize that the essential elements of capital murder as charged in the instant case, pursuant to Sec. 1903(a)(2), supra, are:

1. a person,
2. intentionally,
3. caused the death of an individual,
4. in the course of committing or attempting to commit aggravated robbery.

In the instant case, the indictment alleged and the evidence presented by the State showed that appellant engaged in conduct which constituted each and every essential element of the offense of capital murder under Sec. 19.03(a)(2), supra.[4] Further, the charge of the court in applying the law to the facts required the jury to find each essential element of capital murder under Sec. 19.03(a)(2), supra, in order to convict.

■ We additionally point out that a charge must be viewed as a whole to determine whether fundamental error exists. See *White v. State*, 610 S.W.2d 504, 507 (Tex.Cr.App.1981). Review should not be limited to parts of a charge standing alone. *Jackson v. State*, 591 S.W.2d 820, 824–25 (Tex.Cr.App.1979). In the instant case the second paragraph following the application portion of the charge stated:

> You are further instructed that the mere presence of the defendant, John Henry Selvage, at the scene of the alleged robbery of Stephen Ventura, if you have so found, would not constitute him a party to the offense.

The ground of error is overruled.

■ Appellant next contends that the court's charge to the jury was fundamentally defective for failing to apply the law of parties to the facts of the case.

The record reflects that the abstract portion of the charge defined the law of parties pursuant to Sec. 7.01; 7.02(a)(2); and 7.02(b), V.T.C.A. Penal Code. The charge, in applying the law to the facts, stated in pertinent part as follows:

> Therefore, if you find from the evidence ... that the defendant, John Henry Sel-

---

4. In *Granviel v. State*, 552 S.W.2d 107 (Tex.Cr. App.1976), cert. denied, 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250 (1977), this Court determined that the trial court did not err in refusing to quash an indictment that charged the defendant with the killing of Natasha McClendon while in the course of committing rape on another person, but which failed to name the victim of the rape, as the motion to quash was not timely filed. Id at 114. The Court similarly found in *Vaughn v. State*, 530 S.W.2d 588 (Tex. Cr.App.1975), that absent a motion to quash, an indictment charging the offense of burglary of a habitation with intent to commit injury to a child, was not fundamentally defective.

In *King v. State*, 594 S.W.2d 425 (Tex.Cr.App. 1980), this Court held "that when criminal conduct, constituting an aggravated feature of an offense may be directed at a person other than the ultimate victim of the crime alleged, the specification of that person is a fact to which the accused is entitled *should he request it by timely filed written motion to quash.* Id at 426. (Emphasis supplied) Accord *Silguero v. State*, 608 S.W.2d 619 (Tex.Cr.App.1980); *Evans v. State*, 601 S.W.2d 943 (Tex.Cr.App.1980); *Brasfield v. State*, 600 S.W.2d 288 (Tex.Cr.App.1980).

vage, ... acting alone *or as a party as that term has been defined,* ... [Emphasis added]

Appellant did not request that a charge be submitted applying the law of parties, and did not object to the court's charge because it failed to apply the law of parties to the facts in detail. Rather, appellant requested that *no* instruction on parties be given.

While the court should have explicitly applied the law of parties to the facts of the case, in the absence of an objection or a specially requested charge no fundamental error is present. See *Bilbrey v. State,* 594 S.W.2d 754 (Tex.Cr.App.1980); *Romo v. State,* 568 S.W.2d 298 (Tex.Cr.App.1978) (Opinion on Rehearing). The ground of error is overruled.

■ Appellant also contends that the trial court erroneously submitted the issue of his guilt as presented in count two of the indictment because the evidence was insufficient to show: (1) that appellant knew that the deceased was a peace officer, or (2) the deceased was in the lawful discharge of an official duty at the time of his death. Appellant did not object to the charge on these grounds.

Count two of the indictment stated in pertinent part:

It is further presented that in Harris County, Texas, JOHN HENRY SELVAGE, hereafter styled the Defendant, heretofore on or about July 30, 1979, did then and there unlawfully, intentionally and knowingly cause the death of ALBERT GARZA, hereafter styled the Complainant, a peace officer in the lawful discharge of an official duty, knowing at the time that the Complainant was a peace officer, by shooting the Complainant with a gun.

Considered in the light most favorable to the verdict, the evidence showed that Deputy Sheriff Garza, at the time he was killed, was wearing both his badge and his service pistol. As stated previously, when Garza approached appellant and Kelly, he removed his coat in order to prominently display these items. Exhibit photographs show that Garza's badge was on his belt and plainly visible. One eyewitness testified that as Garza approached appellant "he made a big thing of saying let me help them and taking his coat off so his gun and badge was visible." We find the evidence ample; the jury could reasonably have concluded that appellant was aware of Garza's status as a peace officer.

■ Further, appellant contends that the evidence was insufficient to support a finding that at the time he was killed Garza was in the lawful discharge of an official duty. While it is true that Garza initially entered Ventura's for personal business, when Stephen Ventura expressed his anxiety about appellant and Kelly, Garza assumed the role of a peace officer when he removed his coat to identify himself as a Deputy Sheriff and approached appellant in an attempt to deter him from wrongdoing.

The evidence is sufficient to lead a reasonable jury to conclude that Garza was in the lawful discharge of an official duty.[5] Ground three is overruled.

■ Appellant next challenges the sufficiency of the evidence to support the jury's "yes" answer to Special Issue Number One, submitted by the court at the punishment stage of the trial. See Art. 37.071(b)(1), V.A.C.C.P.[6] Appellant argues that there was no evidence that his actual

---

5. The court charged the jury upon both theories alleged in the indictment: murder in the course of committing robbery, and murder of a police officer in the lawful discharge of his duties. The jury returned a general verdict without specifying under which theory they found appellant guilty. Because the evidence supports the verdict under either theory, their choice of theory was immaterial.

6. Art. 37.071(b)(1) requires that upon the conclusion of the presentation of evidence at the punishment hearing the jury shall determine:
 "(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result."

conduct, verbal or otherwise, caused the death of the deceased; therefore, the imposition of a death sentence under such circumstances constitutes cruel and unusual punishment.

In *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140, the United States Supreme Court considered "whether the eighth Amendment permits imposition of the death penalty on [a defendant] who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed. 458 U.S. at 797, 102 S.Ct. at 3376.[7] In *Enmund*, two victims, aged 86 and 74, were robbed and fatally shot at their farm house in central Florida by Sampson and Jeanette Armstrong. The Armstrongs dragged the bodies into the kitchen, took one victim's money, and fled to a nearby car, where Enmund was waiting to help the Armstrongs escape.

Enmund's common-law wife testified that on the day of the murders Enmund told her that he had decided to rob one of the victims after he had seen his money a few weeks earlier. However, no direct evidence was presented showing that Enmund was present at the killing or that he had any intention of participating in or facilitating a murder.

The Supreme Court stated that it must consider the validity of capital punishment for Enmund's own conduct alone. The Court's focus must be on the defendant's own culpability, not on those who committed the robbery and shot the victims.

The Supreme Court reversed the judgment because it had affirmed the death penalty "in the the absence of proof that Enmund killed or *attempted to kill,* and regardless of whether Enmund intended or contemplated that life would be taken." 458 U.S. at 801, 102 S.Ct. at 3379 (Emphasis added).

In the instant case, although there is no direct evidence that appellant shot the deceased, the evidence was sufficient to show that his conduct was committed deliberately and with reasonable expectation that death would result. Unlike Enmund, appellant used lethal force to effectuate a safe escape and attempted to kill Ventura and Roberts as they pursued him and his companion from the jewelry store. Appellant's action indicate a reasonable expectation that the death of the deceased or another would result.[8]

■ Appellant next contends that the evidence adduced at trial was insufficient to support his conviction under the theory of parties pursuant to Sec. 7.02(a), supra. Appellant argues that in applying the law of parties to the facts of the case the court relied wholly on the law of parties as reflected in Sec. 7.01, and 7.02(a), and did not apply the law of parties as reflected in Sec. 7.02(b), and that the evidence at best supported a conviction pursuant to Sec. 7.02(b).

The abstract portion of the charge instructed the jury on Sec. 7.01, 7.02(a)(2), and 7.02(b). In applying the law to the facts, the charge referred back to the definitional charge, as noted *ante.* The ground of error is overruled.

■ Appellant next contends that the trial court committed fundamental error in failing to give the jury a limiting instruction regarding extraneous offenses admitted during the punishment hearing.

---

7. Under Florida law the death penalty may be imposed solely for participating in a robbery in which another robber takes a life. The Florida Supreme Court had stated that the interaction of the "felony murder rule and the law of principals combined to make a felony generally responsible for the lethal acts of this co-felon". *Enmund v. State,* 399 So.2d 1362, 1369 (Fla. 1981). See Fla.Stat. 3782.04(1)(a); 775.082(1); 921.141(5)(d) (1976 Supp.1982).

8. In *Riles v. State,* 595 S.W.2d 858 (Tex.Cr.App. 1980), this Court held that "in the course of committing or attempting to commit ..." as used in Sec. 19.03(a)(2), supra, means conduct that occurs in an attempt to commit, during the commission, or *in immediate flight after the attempt or commission of the offense.*

Appellant made no request for such an instruction, nor did he object to its omission.

In *Johnson v. State*, 629 S.W.2d 731 (Tex.Cr.App.1981), this Court held that the failure to limit the jury's consideration of extraneous offenses at the punishment stage of a capital murder trial is not fundamental error. Id at 736. Accord: *Romo v. State*, 568 S.W.2d 298 (Tex.Cr.App.1978) (Opinion on Rehearing). The ground of error is overruled.

■ Appellant also contends that prospective juror Hegeman was improperly excused in violation of the standards set forth in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

The prosecuting attorney, after discussing the procedure followed in a capital murder case and explaining the special issues to be answered by the jury at the punishment phase, asked the following questions of prospective juror Hegeman:

Q. Can you conceive of a fact situation under the law of parties where the non-trigger man was on trial—say B or C were on trial and you believed under the law of parties he was guilty of capital murder and you believed the State proved to you both of those questions should be answered yes beyond a reasonable doubt. Can you conceive of a situation where you could answer both of those questions yes as to the non-trigger man?

A. No.

. . . .

Q. ... Does the situation exist where you could conceive of a situation where you could assess the death penalty against a non-trigger man in a proper case if you thought it was proper?

A. No, I could not. I could only assume that one person did the act.

THE COURT: All right, sir, and you could not then do it?

A. No.

MR. TOBIAS: Thank you for your honesty. We suggest a challenge, your Honor.

Appellant's counsel subsequently questioned Hegeman in an effort to rehabilitate him:

Q. ... let's say that you have a gang of people—five, six, or maybe ten that are just real terrors to the community and one of them is being tried for the offense of capital murder and the State cannot prove that he is the one that actually killed the person during the robbery or something, but they can also at the punishment phase introduce evidence that in other—some of these other robberies he had been the killer.

. . . .

... Maybe his gun didn't fire or he didn't have the gun in his hand at the time this person was killed. You could give that person the death penalty, couldn't you?

A. Not for the act that you described.

THE COURT: I think that's a pretty definite answer.

MR. CROW: Pass the witness.

MR. TOBIAS: Thank you for your honesty.

THE COURT: You may be excused, sir.

MR. CROW: Please note our exception, your Honor.

It is apparent from the preceding dialogue that Hegeman stated unequivocally that he would not vote for the death penalty in a case involving the law of parties, regardless of the evidence which might be developed at trial.[9] Under such circum-

---

**9.** We note that no objection was made to the limitation of consideration to cases where there was no proof that the defendant was the actual triggerman. We further note that the question by defense counsel positing a case where the defendant's gun didn't fire clearly distinguishes the situation posited here—involving the clearly deliberate act by the hypothetical defendant, who might not have fired the fatal shot only because of a quirk of fate or mechanical failure—from that of Enmund v. Florida, supra, where the Supreme Court held it impermissible to punish by execution one whose *sole* connection with a capital murder was as a party, and who was not shown to have *attempted, intended,* or *contemplated* the death of the victim. *En-*

stances, his excusal did not violate the standards set forth in *Witherspoon.* See *Bass v. State,* 622 S.W.2d 101 (Tex.Cr.App.1981).

■ Appellant next contends that the trial court improperly granted the State's challenge for cause and excused prospective juror Humphrey in violation of *Witherspoon,* supra.

The record reveals that during examination of Humphrey by the court, the following occurred:

Q. ... Consequently I must ask you, ma'am, whether or not you have any religious, moral or conscientious scruples or scruples of any sort for that matter against the infliction of death as a punishment for a crime in a proper case?

A. I don't think I could. I just don't think I could.

Q. Well, this is one of those times that the law makes me press you. I hate to have to do so but I have a duty to do too in this matter so I have got to have an answer to that question.

A. I would say I could not.

. . . .

Q. That's why I use the term in a proper case. Conceive if you will in you own mind—don't tell me what it is but conceive of the most awful fact situation you can think of—just the most awful situation you can think of. If the State proved those facts to you beyond a reasonable doubt and if you thought it was proper to do so could you enter into a verdict that required the Court to assess the death penalty in that sort of case if you thought it was proper?

A. I don't believe I could.

Q. This is one of those times I have got to have either a yes or no.

A. I would say no.

After again equivocating, Humphrey stated that she could not vote for the death penalty regardless of the evidence presented. The State then challenged Humphrey.

Appellant's counsel then questioned Humphrey as follows:

Q. If you were to have that man and you were called to serve on his jury and you found out he had killed half a dozen other people you could consider the death penalty in that situation, couldn't you?

A. Well, I think there are times that it definitely is warranted but I am not saying that I could sit there and say, you know, that I could vote for it. I think it would bother my conscience to sentence somebody to death.

THE COURT: Bothering your conscience is not the test. It's either you can or you can't. This is one of those times.

A. (By Juror) Well, I guess I could if it was really terrible.

Because of her equivocal answers, the court questioned Humphrey as follows:

THE COURT: ... The law in this state holds the non-triggerman as responsible as the triggerman. Could you in a proper case if the Court instructed you that that was the law vote to assess the death penalty for a nontriggerman?

A. (By Juror) I would say no.

THE COURT: Under any circumstances? I am going to have to go through the same bit with you.

A. (By Juror) No.

THE COURT: Under no circumstances?

A. (By Juror) Well, I know that you are guilty by association.

. . . .

THE COURT; Why don't you just say yes or no.

A. (By Juror) Yes, I could.

*mund* did not bar the execution of participants in a capital murder who, although not shown to have fired the fatal shot, deliberately participated with the expectation that death would result. Thus, *Enmund* does not authorize the automatic refusal to consider the death penalty for one who does not fire the fatal shot no matter how deep the involvement of the defendant in the murder itself.

THE COURT: All right, in a proper case?

A. (By Juror) Yes.

The prosecuting attorney again took up the questioning:

Q. ... Could you sit on a jury and could you return a verdict that would call for the Court to assess the death penalty in a proper case?

A. No.

Q. No matter what evidence I produced? You see—

A. I know what you are saying but I just don't think I could. I don't think I would make a good juror for that.

....

THE COURT: Nobody is going to quarrel with you if you can or if you can't but we just have to know—all of those lawyers have to know.

A. (By Juror) I still say no.

MR. TOBIAS: Judge, we renew our challenge. Thank you ma'am.

Subsequently, appellant's counsel questioned Humphrey as follows:

Q. ... [J]ust think of the most awful circumstance you can think of. You could give the death penalty, couldn't you?

A. Well, I wouldn't want to.

Q. Like I said, nobody wants to, ma'am, but what I am saying is would you consider it and could you do it if it was just that horrible and just that awful a situation?

A. Well, I just really don't—I just say no.

In the final analysis, Humphrey's testimony makes it apparent that she was opposed to the death penalty and, regardless of the facts, could not vote to assess it. The ground of error is overruled.

In two grounds of error, appellant contends that the trial court improperly excused prospective jurors Chase and Hobbs in violation of *Witherspoon,* supra.

A review of the record reveals that at the time the State's challenge for cause was made and sustained as to the aforemen-tioned jurors, appellant voiced no objection. This Court has consistently held that the failure to object to the alleged improper exclusion of a prospective juror in a capital murder trial waives error for the purposes of appeal. See *White v. State,* 629 S.W.2d 701 (Tex.Cr.App.1981); *Bass v. State,* 622 S.W.2d 101 (Tex.Cr.App.1981); *Crawford v. State,* 617 S.W.2d 925 (Tex.Cr.App.1980), cert. denied 452 U.S. 931, 101 S.Ct. 3067, 69 L.Ed.2d 431 (1981). Further, even if appellant had preserved error regarding prospective jurors Chase and Hobbs, the record reflects that both unequivocally stated that they could not vote for the death penalty under any circumstances. The grounds of error are overruled.

The judgment is affirmed.