805 F.2d 1422
 William Thomas ZEIGLER, Jr., Petitioner-Appellant,
v.
Louie L. WAINWRIGHT, Secretary Florida Department of
Offender Rehabilitation; Richard Dugger, Superintendent of
Florida State Prison at Starke, Florida, Jim Smith, Attorney
General of the State of Florida, Respondents-Appellees.
 Nos. 86-3310, 86-3311.
 United States Court of Appeals,
Eleventh Circuit.
 Nov. 24, 1986.
 
 Steven L. Winter, University of Miami School of Law, Coral Gables, Fla., for petitioner-appellant.
 Richard W. Prospect, Margene A. Roper, Asst. Attys. Gen., Daytona Beach, Fla., for respondents-appellees.
 Appeals from the United States District Court for the Middle District of Florida.
 Before RONEY, Chief Judge, HATCHETT and EDMONDSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 The historic facts of this case are set forth in the Supreme Court of Florida's opinion. Zeigler v. State, 402 So.2d 365 (Fla.1981), cert. denied 455 U.S. 1035, 102 S.Ct. 1739, 72 L.Ed.2d 153 (1982). We detail the procedural history and the petitioner's claims because of this circuit's view that it is important to "leave tracks" in habeas corpus litigation.
 
 
 2
 In 1976, a jury convicted the appellant, William Thomas Zeigler Jr., of two counts of first degree murder and two counts of second degree murder. The court sentenced Zeigler to death on each of the first degree murder counts and to life imprisonment on each of the second degree murder counts. In 1982, the Governor of Florida signed a death warrant, and Zeigler's execution was scheduled for October 22, 1982. Two weeks prior to the scheduled execution, Zeigler obtained the representation of William F. Duane and Harrison T. Slaughter, lawyers, to represent him in an effort to block his execution. After the Supreme Court of Florida denied an application for a stay of execution, Duane and Slaughter, on October 18, 1982, filed an Application for a Stay of Execution and a Petition for Writ of Habeas Corpus in the United States District Court for the Middle District of Florida. Because one of Zeigler's claims was identical to an issue pending in an Eleventh Circuit en banc case, Ford v. Strickland, 696 F.2d 804 (11th Cir.1983), the district court, on October 19, 1982, stayed Zeigler's execution. On November 12, 1982, the district court granted Zeigler's motion for a continuance and later allowed Zeigler until January 14, 1983, to initiate exhaustion of all of his claims in state court. The order stated that all claims not exhausted would be considered waived and barred from further consideration.
 
 
 3
 Pursuant to the district court's order, Zeigler filed a state habeas corpus petition alleging nineteen grounds of error. At about this time, the district court granted Slaughter's motion to withdraw, leaving Duane as Zeigler's only lawyer. After the Supreme Court of Florida remanded Zeigler's state habeas corpus petition for a hearing on one of his claims, Zeigler v. State, 452 So.2d 537 (Fla.1984), the Supreme Court of Florida affirmed the denial of post-conviction relief. Zeigler v. State, 473 So.2d 203 (Fla.1985).
 
 
 4
 On August 30, 1985, the district court ordered Zeigler to file an amended petition listing each ground for habeas corpus relief, with its procedural history, and factual and legal bases for each claim. The district court also directed the parties to prepare and file a complete record of the state proceedings. In so ordering, the district court stated: "The parties may use the attached checklist as a guide when submitting and marking items of the record."[1]
 
 
 5
 On September 16, 1985, Duane filed a motion to withdraw, stating that he planned to leave the state of Florida and that his inexperience in federal habeas corpus proceedings rendered him incompetent to continue representing Zeigler. On September 27, 1985, the due date for the amended petition, Duane filed a motion for continuance stating that Mark Olive, a lawyer, had agreed to represent Zeigler. According to Olive's affidavit, Olive had told Duane that he was not authorized to provide actual representation.[2] On October 3, 1985, the district court denied Duane's motion to withdraw without a hearing, finding that "at the present time, Mr. Duane is the most competent person to represent petitioner and to assist him in fulfilling the requirements of the court's August 30, 1985 order...." The district court did not rule on the pending motion for continuance although the amended petition required by the August 30, 1985, order was then six days overdue.
 
 
 6
 On October 21, 1985, Duane filed the habeas corpus checklist. Appended to the checklist was a page entitled, "ISSUES RAISED IN STATE COURT 3.850 PETITION." The checklist listed all of the issues raised in the state post-conviction proceedings except a claim of jury misconduct.
 
 
 7
 Upon being informed by the district court's staff that the district court was treating the checklist as the amended petition required by the district court's August 30, 1985 order, the state filed a request for a status conference. In the request, the state noted that it had contacted Duane who stated that the checklist was not intended to serve as the amended petition. The state further informed the district court of the confusion regarding Zeigler's representation. Duane told the state that Olive was counsel and that Olive would file an amended petition in six weeks. Olive, however, told the state that although he had the file in the case, he was seeking another volunteer lawyer to represent Zeigler. The state expressed its concern about "the current posture of the case ... especially in terms of effective representation of counsel."
 
 
 8
 The district court, without a hearing, without a status conference, and without any inquiry, in an order dated December 5, 1985, found that Duane was the most competent person to represent petitioner and directed the clerk to file the issues listed on the habeas corpus checklist as the amended petition required by the August 30, 1985, order.
 
 
 9
 On January 3, 1986, the district court entered an order dismissing Zeigler's habeas corpus petition. The opinion stated that several of the claims alleged in the original petition were subsumed in a new petition as required by its August 30, 1985, order and that the other claims were deemed abandoned. The district court, in denying relief, failed to address one of the claims listed on the habeas corpus checklist.
 
 
 10
 No notice of appeal from the January 3, 1986, order of dismissal was filed. According to Duane's affidavit, the Office of Capital Collateral Representative ("CCR"),[3] the office that employed Olive, had agreed to assume all future representation in the case. According to Olive's affidavit, CCR agreed to take over the appeal, understood that Duane was counsel of record, and assumed that a timely notice of appeal had been filed. In a letter to Zeigler, dated January 29, 1986, before the time for filing notice of appeal had expired, Duane represented that he was working in cooperation with CCR and that an appeal "is presently in preparation."
 
 
 11
 While CCR was working on the appellate brief, the Governor of Florida signed a second death warrant, and Zeigler's execution was scheduled for May 20, 1986. At this point, CCR discovered that no appeal had been filed. In Case No. 86-3310, CCR filed in district court a Fed.R.Civ.P. 60(b) motion for relief from judgment to allow the filing of an amended petition so that judgment could be reentered, a timely appeal could be taken, and an application for stay of execution filed.
 
 
 12
 In Case No. 86-3311, H. Vernon Davids, Zeigler's trial lawyer, filed a petition for writ of habeas corpus in district court presenting Zeigler's original five claims along with his exhausted 3.850 claims, alleging that the CCR provided Zeigler ineffective assistance of counsel by failing to file a timely notice of appeal from the district court's dismissal of Zeigler's habeas corpus petition. The district court denied the motions for relief from judgment and for leave to file an amended petition. The district court also denied the Davids's petition. In each case, it denied application for a certificate of probable cause and for a stay pending appeal. We granted a stay of execution pending appeals in both cases.
 
 
 13
 Zeigler contends that he was entitled to relief from judgment pursuant to Fed.R.Civ.P. 60(b), because the district court abused its discretion in denying relief. He bases this contention on three grounds: (1) the district court failed to consider the irrefutable record of neglect and incompetence of counsel that led to the current impasse; (2) the district court failed to consider its own failure to respond adequately to the situation; and (3) the district court failed to consider its own role in evoking petitioner's purported forfeiture of his rights.
 
 
 14
 Zeigler further contends that he is entitled to plenary reconsideration of his claims because ineffectiveness of counsel deprived him of due process in the consideration of his first habeas corpus petition. The two events he cites are: failure to file a proper and timely amended petition asserting all of his exhausted claims and the failure to file a timely notice of appeal from the order of dismissal. Although the right to effective assistance of counsel during post-conviction proceedings has not been established, Zeigler argues that the Florida statute creating the CCR and delineating its responsibility creates a protected liberty interest in effective assistance of counsel. Thus, the failure of CCR to file an amended petition and a timely notice of appeal amounted to a deficiency of constitutional magnitude.
 
 
 15
 The government contends that an appellate court does not have jurisdiction of an appeal from a dismissal of an application for writ of habeas corpus where the notice of appeal is untimely filed. It further urges that a district court cannot, under the guise of a rule 60(b) motion, extend the time for filing a notice of appeal from a final judgment by vacating that judgment and entering a new judgment. Alternatively, it contends that even if this court has jurisdiction, the district court did not abuse its discretion.
 
 
 16
 The government also argues that the Florida statute creating the CCR does not create substantive constitutional rights. Moreover, although CCR is charged with representing all indigent unrepresented death row inmates in collateral proceedings, since Duane remained counsel of record until Olive replaced him as counsel of record for the filing for 60(b) relief from judgment, Zeigler does not fall into the protected class of persons contemplated by the statute.
 
 
 17
 The case presents interesting issues, but several matters, not directly on the merits of the issues, are apparent. It is apparent that for one or many reasons the petitioner, William Thomas Zeigler, Jr., has never had his federal habeas corpus claims effectively presented and fully considered in federal court. Confusion, misunderstanding, inadvertence, changes in representation, recalcitrant counsel--all may have contributed to the failure to afford Zeigler the full panoply of rights to which he is entitled. On this record, we need not assign or focus on fault. Nor do we create a right to effective assistance of counsel in habeas corpus cases where the death penalty is involved. Instead, we focus on due process of law and the orderly and efficient administration of justice. Among the principles that guide us in this case are the following:
 
 
 18
 The writ of habeas corpus is the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action. Its pre-eminent role is recognized by the admonition in the Constitution that: 'The Privilege of the Writ of Habeas Corpus shall not be suspended....' U.S. Const., Art. I, Sec. 9, cl. 2. The scope and flexibility of the writ--its capacity to reach all manner of illegal detention--its ability to cut through barriers of form and procedural mazes--have always been emphasized and jealously guarded by courts and lawmakers. The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected.
 
 
 19
 Harris v. Nelson, 394 U.S. 286, 290-91, 89 S.Ct. 1082, 1086, 22 L.Ed.2d 281 (1969).
 
 
 20
 The Constitution requires that when the fact or timing of an execution is contingent upon the resolution of a disputed issue, then that issue must be determined "with the high regard for truth that befits a decision affecting the life or death of a human being." Ford v. Wainwright, --- U.S. ----, ----, 106 S.Ct. 2595, 2603, 91 L.Ed.2d 335 (1986) (plurality opinion).
 
 
 21
 We have jurisdiction. The protections intended to be afforded by federal habeas corpus were not available to this petitioner. Due to circumstances, some of which the parties attempted to bring to the district court's attention, the justice system failed to function properly. See United States v. Cronic, 466 U.S. 648, 104 S.Ct. 1039, 80 L.Ed.2d 657 (1984). Additionally, we note that Zeigler contends he is, in fact, innocent of the murders for which he has been sentenced to death. As we recently stated in speaking of our supervisory powers, "our obligation [is] to oversee the efficient administration of justice...." Thigpen v. Smith, 792 F.2d 1507, 1516 (11th Cir.1986).
 
 Accordingly, it is ordered that:
 
 22
 1. both cases are REMANDED to the district court;
 
 
 23
 2. the district court is directed to consider what sanctions, if any, are appropriate due to the actions or inactions of any, or all, of the lawyers in this case,
 
 
 24
 3. the district court is directed to VACATE its judgments;
 
 
 25
 4. the district court is further directed to allow the petitioner a reasonable time to file a new amended petition, limited to claims on which exhaustion was completed or initiated not later than January 14, 1983, and to speedily conduct further proceedings leading to the entry of final judgment.
 
 
 
 [1]
 The checklist is a form used in the Middle District of Florida in habeas corpus cases. It has four parts to be filled out by the petitioner. Part 1 seeks general case information concerning the original conviction. Part 2 directs the petitioner to attach and identify, with tabs, various portions of the pretrial, trial, and sentencing record. Part 3 requests the same information concerning the record on direct appeal. Part 4 requests the same information with regard to the state post-conviction proceedings
 
 
 [2]
 At the time Olive worked with the Volunteer Lawyers Resource Center, an organization supported by the Florida Bar established to provide expert advice to volunteer lawyers handling post-conviction matters for death-sentenced prisoners. Subsequently, Olive joined the Office of the Capital Collateral Representative which is authorized to provide actual representation to death-sentenced prisoners
 
 
 [3]
 The Florida Legislature created the Office of Capital Collateral Representative "to provide for the representation of any person convicted and sentenced to death in this state who is unable to secure counsel due to indigency, so that collateral legal proceedings to challenge such conviction and sentence may be commenced in a timely manner and so as to assure the people of this state that the judgments of its courts may be regarded with the finality to which they are entitled in the interests of justice." Fla.Stat.Ann. Sec. 27.7001 (West Supp.1986)