**John Henry SELVAGE,
Petitioner-Appellant,**

v.

**James A. LYNAUGH, Director, Texas
Department of Corrections,
Respondent-Appellee.**

No. 87–2285.

United States Court of Appeals,
Fifth Circuit.

July 23, 1987.
Rehearing Denied Aug. 19, 1987.

David Cunningham, Houston, Tex., for petitioner-appellant.

Paula Offenhauser, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before CLARK, Chief Judge, WILLIAMS and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

John Henry Selvage appeals from the district court's denial of his petition for habeas corpus in which he attacks his state court conviction for capital murder and his resulting sentence of death. Selvage makes three related arguments attacking the sufficiency of the evidence. We affirm.

## I

On December 4, 1979, Selvage was indicted for the offense of capital murder of Albert Garza on two grounds: (1) that Garza was a peace officer known by Selvage to be acting in the lawful discharge of his duty; and (2) that Selvage or his confederate killed Garza while attempting to rob Stephen Ventura. A jury found him guilty, and after the punishment hearing, answered affirmatively the special interrogatories required by Texas law resulting in his sentence of death in February 1980. The Texas Court of Criminal Appeals affirmed his conviction and sentence. *Selvage v. State*, 680 S.W.2d 17 (Tex.Crim. App.1984) (en banc). Selvage did not seek review by the United States Supreme Court.

The 230th District Court of Harris County, Texas, set Selvage's execution date for November 14, 1985. Selvage did not seek state habeas relief, but on November 8, 1985, requested a stay of execution from the United States District Court for the Southern District of Texas, relying on arguments made to the Texas courts. The federal trial court granted a stay pending further order, and on December 16, 1985, directed Selvage to file an amended petition to meet the pleading requirements of the rules governing federal habeas. The district court denied his petition. After a rankle over notice of appeal, this appeal followed.

## II

The attempted robbery and murder occurred on July 30, 1979. Stephen Ventura was the owner and operator of Ventura's Jewelry Store located in Houston, Texas. Albert Garza, a deputy sheriff with the Harris County Sheriff's Department and a friend of Ventura, visited his store shortly before 6:00 p.m. to use the telephone. Garza's duties included the service of process for state district courts in Harris County and he carried an arrest warrant, or instanter subpoenae, and other civil process when he entered the store. Garza engaged in conversation with Ventura and two employees, Charlye Jo Ivy and Ken

Roberts. About this time, a black female entered the store and asked Ivy's assistance in choosing a birthday present. Ivy became suspicious when the woman did not remember the birthdate of her daughter for whom she claimed to be shopping. Shortly thereafter, two black males entered the store, each carrying a bag or satchel. Ventura told Garza that he was uncomfortable because he had seen the two black men in the store before and they were not regular customers. Garza, seeing that Ventura was nervous, came from the back of the store. As he did so, he removed his coat, making visible his gun and badge that were attached to his belt. Garza walked toward Selvage and volunteered to help him. When Garza asked Selvage if he could help, Selvage asked about the "big diamond" he had earlier seen, while the man with him asked Ventura about wedding sets. While Ventura was bending over to obtain a lay-a-way ticket he heard a shot, but no one saw who fired it. Garza, struck in the neck by the bullet, pushed Ventura toward the back office to which Ventura fled. Ventura obtained a pistol from his safe in the office and returned to the showroom where Selvage was removing jewelry from a showcase. Ventura opened fire as Selvage and his partner fled the store. Ventura chased them into a parking lot around the corner where Selvage and his partner returned the fire. While, as indicated, Garza was armed, he never had the opportunity to unholster his gun. Garza died of the gunshot wound to the neck. Ventura, Ivy and Roberts each identified Selvage as one of the two males who entered the store. According to the evidence, Wilbur Kelley was the other male.

## III

### A

Selvage first argues that there was insufficient evidence to "show appellant is a party to capital murder on the charge presented to the jury"; that "there is no evidence of any kind to show appellant intended to kill Albert Garza or that he solicited, encouraged, anyone to do so." Relatedly, the argument continues "there is no evidence to show any pre-arranged plan or agreement to kill." We are unpersuaded.[1]

The district court applied the correct standard for the sufficiency of the evidence in a federal habeas review of a state court conviction. The inquiry is:

[W]hether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original; citation omitted). We turn to that issue.

### B

The state trial judge's charge to the jury included an abstract definition of the law of parties and criminal responsibility set forth in the Texas Penal Code:

All persons are parties to an offense who are guilty acting together in the commission of an offense. "A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both" (quoting Tex. Penal Code Ann. § 7.01 (Vernon 1984));

"A person is criminally responsible for an offense committed by the conduct of another if[,] ... acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense" (quoting Tex. Penal Code Ann. § 7.02(a)(2) (Vernon 1984));

---

1. We note that Selvage makes no *Enmund* argument, presumably because the Texas Court of Criminal Appeals made an explicit *Enmund* finding. *Selvage v. State*, 680 S.W.2d 17, 22 (Tex.Crim.App.1984); *see also Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982); *Cabana v. Bullock*, 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986). Selvage also does not challenge on appeal the exclusion of certain veniremen, although he did raise this issue below. Because these issues are not raised before us, we do not consider them.

"If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy" (quoting Tex. Penal Code Ann. § 7.02(b) (Vernon 1984)).

The judge also instructed the jury that "mere presence alone will not constitute one as a party to an offense."

In his sufficiency of the evidence argument, Selvage argues that those charges' abstract statements were not applied to the facts of the case and that his guilt, therefore, rested solely on the abstract instruction. But Selvage did not challenge the charge at trial. His failure to object was relied upon by the Texas Court of Criminal Appeals in rejecting his attack upon the charge. *Selvage*, 680 S.W.2d at 21. And he offers us no legal escape from the contemporaneous objection rule. Moreover, we note that, in any event, there is no deficiency of constitutional proportion in the charge. The Texas law of parties was sufficient to support the findings of guilt and, as we will see, the jury's findings of deliberateness are sufficient to support the death sentence. Relatedly, while the charge at the guilt stage was not sufficient to support an *Enmund* finding of the requisite personal culpability, a jury finding is not essential. *See Cabana v. Bullock*, 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986).

There is, as the state convincingly argues, an abundance of evidence that Selvage and his partner planned the robbery. Ventura saw both of them in the store the Friday before the robbery. An acquaintance of Selvage testified that Selvage tried to get him to participate in the robbery and that Selvage had helped Kelley plan it. Moreover, there was significantly more evidence than mere presence at the scene. Selvage and Kelley entered the store armed with hidden pistols on the pretext of buying jewelry. While there is no direct evidence that Selvage fired the fatal shot, he was standing immediately in front of and talking to Garza at the time. There is evidence that Garza was struck in the neck at a distance of three to six feet from the triggerman. Finally, several witnesses saw Selvage fire his pistol during his escape. There is also evidence that the pistol which fired the fatal shot came from a brown bag which belonged to Selvage. But significantly, even if Kelley was the triggerman, the jury was entitled to conclude that Selvage aided or attempted to aid his companion in murdering Garza; no more is required.

## IV

Selvage argues that there was insufficient evidence to support the affirmative answer to the first death penalty interrogatory. In that interrogatory the jury was asked:

(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result.

As the state points out, the jury was entitled to find that the shooting of Garza was deliberate from the circumstance that Selvage entered the store with a deadly weapon, planning to use it in the robbery and escape, as well as from his demonstrated willingness to take life in the gunfire that accompanied his flight.

## V

Selvage's last argument is that there is insufficient evidence for the jury to conclude that Selvage knew Garza was acting as a peace officer in the lawful discharge of his official duty. Ventura testified that Garza "brazenly" showed his gun and badge to the three individuals who walked into the store, and that they all turned to look at Garza. Ivy testified that when Garza walked from the back office, having removed his coat, he "directed his badge and gun toward one of the males." Finally, Roberts testified that Garza's badge was visible when Garza removed his

coat and placed it in the chair. We are persuaded, as was the district court below and the Texas Court of Criminal Appeals, that the jury could have properly concluded that Selvage knew that Garza was a peace officer.

AFFIRMED.