**Fletcher Thomas MANN, Plaintiff,**

v.

**James A. LYNAUGH, Director, Texas Department of Corrections, Defendant.**

**No. CA 3–88–1418–R.**

United States District Court,
N.D. Texas,
Dallas Division.

June 22, 1988.

Eden E. Harrington, Adjunct Professor, School of Law, University of Texas at Austin, Austin, Tex., Scott W. Anderson and Dean S. Neuwirth, Arnold & Porter, Denver, Colo., for plaintiff.

Jim Mattox, Atty. Gen., Mary F. Keller, First Asst. Atty. Gen., Lou McCreary, Executive Asst. Atty. Gen., Michael P. Hodge, Asst. Atty. Gen., Chief Enforcement Div., and William C. Zapalac, Asst. Atty. Gen., Austin, Tex., for defendant.

## MEMORANDUM OPINION

BUCHMEYER, District Judge.

This is a death penalty case. The petitioner is Fletcher Thomas Mann, who is before this Court for the second time. *Mann v. Lynaugh,* 688 F.Supp. 1121 (N.D. Tex.1987), *appeal dismissed,* 840 F.2d 1194 (5th Cir.1988).

For the following reasons, Mann's motion for relief from judgment under Rule 60(b), Fed.R.Civ.P., is GRANTED—and the execution of Mann, now scheduled for June 25, 1988, is STAYED pending this Court's consideration of the amended petition for writ of habeas corpus to be filed by Mann within thirty (30) days from the date of this opinion.

## 1. THE PROCEDURAL HISTORY

Mann's previous petition raised only two issues: the improper exclusion of jurors under *Witherspoon*[1] and the improper admission of Mann's confession. The second issue—the confession—raised substantial constitutional questions; the first issue did not.

On October 20, 1987, this Court denied the petition for writ of habeas corpus. On November 20, 1987, Mann's attorney filed a notice of appeal. On March 15, 1988, the Fifth Circuit—because the notice of appeal

had been filed one day after the time prescribed in Rule 4(a), Fed.R.App.P.—reluctantly dismissed the appeal for want of jurisdiction. *Mann,* 840 F.2d at 1201.[2]

On May 20, 1988, the state scheduled Mann's execution for June 25, 1988. On June 17, 1988, new attorneys representing Mann filed a motion under Rule 60(b), Fed. R. Civ. P., asking this Court:

(i) to vacate the judgment entered on October 20, 1987 and permit Mann to file an amended petition for writ of habeas corpus; or

(ii) in the alternative, to "re-enter the October 20, 1987 judgment and to stay [Mann's] execution pending expiration of the time to appeal the re-entered judgment."

On June 21, 1988, the state filed its Opposition to Motion to Vacate Judgment and For Stay of Execution.[3]

Specifically, Mann's motion alleges two grounds for relief: "*First,* prior counsel filed a two-issue petition for writ of habeas corpus, which neglected to raise substantial and meritorious claims on Mann's behalf. *Second,* prior counsel failed to protect Mann's right to appellate review of this Court's denial of the petition ... by failing to file a timely notice of appeal or an appropriate motion for extending the time for filing the notice of appeal."

## 2. RELIEF FROM PRIOR JUDGMENT

 Mann is, without question, entitled to relief under Rule 60(b) in order to perfect an appeal from this Court's judgment of October 20, 1987. Indeed, one of the very purposes of Rule 60(b) is to prevent litigants from being deprived of their day in court because of inadvertent, technical mistakes of their attorneys.

---

1. *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

2. This Court *was not* aware that the notice of appeal was untimely when it issued a "Certificate of Probable Cause" to appeal on December 9, 1987. However, *if it had been, there is no question that the time for filing the notice of appeal would have been extended by this Court* under Rule 4(a)(5), Fed.R.App.P.

3. Although Mann's original attorney filed a motion to extend the time for filing a petition for writ of certiorari from May 14 to June 13, 1988, no such petition was filed from the Fifth Circuit's decision of March 15, 1988 in *Mann v. Lynaugh,* 840 F.2d 1194 (5th Cir.1988).

For example, Rule 60(b) relief has been granted to defendants in a slander suit whose attorney did not appear for trial[4] ... and to the plaintiff in a medical malpractice case whose new attorney failed to file a timely appearance[5] ... and to the plaintiff in a § 1983 case whose attorney failed to notify the court of a change in address.[6] If Rule 60(b) relief is proper to prevent clients from suffering possible loss of money or property because of their lawyers' negligence, then certainly it is proper in a death penalty case to prevent a defendant from being deprived of the right to an appeal before his execution.

Therefore, in prior habeas proceedings in death penalty cases, relief under Rule 60(b) has been routinely granted where an attorney's negligence caused the lack of a timely notice of appeal. See, e.g., *Selvage v. Lynaugh*, 823 F.2d 845 (5th Cir.1987);[7] *Zeigler v. Wainwright*, 805 F.2d 1422 (11th Cir.1986). Just as in *Selvage and Zeigler*, Mann's Rule 60(b) motion should be granted in this case—particularly since (i) the issue raised concerning the admission of Mann's confession does raise serious constitutional issues, and (ii) this Court feels very strongly that its opinion of October 20, 1987 should be reviewed on appeal.

### 3. NEW GROUNDS FOR RELIEF

Under the circumstances of this case, Mann should also be permitted to file an amended petition for writ of habeas corpus raising new grounds for relief.

#### a. The Franklin Issue

*Today*, June 22, 1988, the United States Supreme Court rendered its decision in *Franklin v. Lynaugh*, —— U.S. ——, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988), affirming 823 F.2d 98 (5th Cir.1987).[8]

The question addressed in *Franklin* was whether the jury "must be instructed on the effect of mitigating evidence under the Texas capital punishment scheme" under which the jury is asked two questions: whether it has found beyond a reasonable doubt (i) that the murder was committed deliberately and with the reasonable expectation that death would result, and (ii) that there is a probability that the defendant would constitute a continuing threat to society. However, the only "mitigating evidence" in *Franklin* was that "petitioner's disciplinary record while incarcerated from 1971–1974 and 1976–1980 was without incident."

Four justices (White, Scalia, Kennedy, and Chief Justice Rehnquist) held that the *Franklin* jury was not precluded from "consideration of any relevant mitigating circumstances." Three justices dissented (Stevens, Brennan, Marshall), primarily on the grounds that "the Texas scheme [is unconstitutional because it] limits [the jury's] consideration to only that mitigating evidence that bears on one or more of the [two] Special Issues." The concurring opinion by Justice O'Connor, joined by Justice Blackmun, reasoned that under the particular facts before the Court in *Franklin*—where the only "mitigating evidence" was that the defendant "had no disciplinary violations while in prison"—the jury's consideration of this evidence was not limited

---

4. *Seven Elves v. Eskenazi*, 635 F.2d 396 (5th Cir.1981).

5. *Roberts v. Rehoboth Pharmacy, Inc.*, 574 F.2d 846 (5th Cir.1978).

6. *Blois v. Friday*, 612 F.2d 938 (5th Cir.1980).

7. The *Selvage* opinion remarks that after a "rankle over notice of appeal, this appeal followed." 823 F.2d at 846. According to Mann's Rule 60(b) motion, this "rankle" in *Selvage* occurred when the attorney who handled the matter before the district court failed to take any further action for Selvage after the district court announced its judgment denying relief. Several *months* after the time for filing a notice of appeal had run, new counsel sought Rule 60(b) relief. The district court *granted* the 60(b) motion and re-entered its order denying habeas relief. A timely appeal followed.

8. While this case was pending, the Fifth Circuit recognized the seriousness and the impact of the *Franklin* issue. See Judge Reavley's discussion in *Penry v. Lynaugh*, 832 F.2d 915 (5th Cir.1987) —as well as Judge Higginbotham's observation in *Selvage v. Lynaugh*, 842 F.2d at 89, 95 (5th Cir.1988): "In these circumstances, the execution of a death sentenced prisoner with a properly preserved and potentially valid *Franklin* claim should be stayed."

because it was "free to give mitigating effect to this evidence in answering the special verdict question regarding future dangerousness."

However, Justices O'Connor and Blackmun clearly agreed with the three dissenting justices that, in a case presenting different facts, the Texas capital punishment scheme may well be unconstitutional. The concurring opinion states:

"The plurality concludes that the jury's consideration of petitioner's prison record and of its 'residual doubts' about his guilt was not limited in this case, but nevertheless goes on to suggest that a State may constitutionally limit the ability of the sentencing authority to give effect to mitigating evidence relevant to a defendant's character or background or to the circumstances of the offense that mitigates against the death penalty. Ante, at 13, 14, n. 10. *Unlike the plurality, I have doubts about a scheme that is limited in such a fashion.* I write separately to express those doubts and to explain my reasons for concurring in the judgment.

. . . . .

Under the sentencing procedure followed in this case the jury could express its views about the appropriate punishment only by answering the special verdict questions regarding the deliberateness of the murder and the defendant's future dangerousness. To the extent that the mitigating evidence introduced by petitioner was relevant to one of the special verdict questions, the jury was free to give effect to that evidence by returning a negative answer to that question. If, however, petitioner had introduced mitigating evidence about his background or character or the circumstances of the crime that was not relevant to the special verdict questions, or that had relevance to the defendant's moral culpability beyond the scope of the special verdict questions, the jury instructions would have provided the jury

with no vehicle for expressing its 'reasoned moral response' to that evidence. *If this were such a case, then we would have to decide whether the jury's inability to give effect to that evidence amounted to an Eighth Amendment violation.* In my view, however, this is not such a case...." (Emphasis added.)

Although Mann's Rule 60(b) motion was filed five days before the Supreme Court's *Franklin* opinion, it presents the very case described by Justice O'Connor in the above-quoted portions of the concurring opinion. Specifically, in an Application for Post-Conviction Writ of Habeas Corpus filed on June 22, 1988 with the Texas Court of Criminal Appeals, Mann argues:

"A preliminary investigation has revealed mitigating evidence which could have been presented to the jury, but was effectively precluded by the Texas sentencing procedure. Petitioner's trial counsel acknowledges that he did not investigate whether petitioner suffered from some mental illness, because he was aware that the jury could not, under the Texas sentencing scheme, consider that evidence *as mitigating.* Exhibit 4. Had petitioner's attorney not been chilled from exploring Petitioner's mental illness, he would have discovered that Petitioner may suffer from organic pathology, and could be diagnosed as suffering from schizophrenia, sociopathy, or pseudo-psychopathic schizophrenia. Exhibit 5 at 3–4.[9]

Other mitigating evidence was excluded from Petitioner's trial based because of constitutional defects the issues raised in *Franklin* and *Penry.* For example, there is overwhelming evidence that Petitioner was subject to extraordinary physical abuse as a child. Exhibits 1, 2, 3, 5. Petitioner was beaten by his father with fists, belts, switches, and other objects. Exhibits 1, 2. These beatings would sometimes draw blood. Exhibit 1. The beatings began when Petitioner was four and continued until he was eighteen.

---

**9.** Exhibit 1 to this Application is an affidavit of Mann's half-sister; Exhibits 2 and 3 are affidavits of Mann's mother and father; Exhibit 4 is the affidavit of one of Mann's state court trial attorneys; and Exhibit 5 is the affidavit of Dr. Windel Dickerson, a psychologist.

Exhibits 1, 2. Petitioner's father averred that he would beat his son four or five times a week during Petitioner's teenage years. Exhibit 3.

There is also evidence of substantial drug abuse by Petitioner, which began when he was about nine or ten years old. Exhibit 5. Petitioner engaged in a variety of drug abuses, including sniffing glue, lighter fluid, and nasal spray, using PCP and heroin, injecting speed, and smoking marijuana. Exhibits 2, 3. He has also used cocaine and LSD with some frequency. Exhibit 5 at 2. A psychologist who examined Petitioner notes that such early drug abuse can have serious adverse effects on development. Exhibit 5 at 4. Even prior to this abuse, the Petitioner exhibited diminished development. He was placed in classes for the learning disabled while in elementary school, and dropped out of school in the eighth grade. Exhibit 2."

Mann argues that his jury was prevented from giving any effect to this mitigating evidence because it was not relevant to either of the two "Special Issues"—the deliberateness of the murder and the defendant's future dangerousness. In addition, Mann argues that his trial attorneys were placed in an impossible position: "Any evidence which showed Mann's violent behavior was caused by mental illness or disorder—while mitigating, in the sense that it would lessen his responsibility for the murder—would actually have *supported* the finding of a probability of future dangerousness."[10] And, Mann's present attorneys will certainly support their arguments by this additional portion of Justice O'Connor's concurring opinion in *Franklin*:

In my view, the principle underlying *Lockett* [*v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978)], *Eddings* [*v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869,

71 L.Ed.2d 1 (1982)], and *Hitchcock* [*v. Dugger*, 481 U.S. ——, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987)] is that punishment should be directly related to the personal culpability of the criminal defendant.

"[E]vidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse. ... Thus, the sentence imposed at the penalty stage should reflect a reasoned *moral* response to the defendant's background, character, and crime." *California v. Brown*, 479 U.S. 538, 545 [107 S.Ct. 837, 841, 93 L.Ed.2d 934] (1987) (O'Connor, J., concurring) (emphasis in original)."

In light of this principle it is clear that a State may not constitutionally prevent the sentencing body from giving effect to evidence relevant to the defendant's background or character or the circumstances of the offense that mitigates against the death penalty. Indeed, the right to have the sentence consider and weigh relevant mitigating evidence would be meaningless unless the sentence was also permitted to give effect to its consideration.

■ This does not mean, of course, that Mann's assertions of these new grounds for relief in an amended petition will be successful. However, it does mean that serious legal issues have been presented by Mann under the *Franklin* decision rendered today by the United States Supreme Court—and that additional time is needed for the careful consideration of these issues and the *Franklin* opinions.

---

**10.** See Judge Reavley's discussion in *Penry*, 832 F.2d at 925 (5th Cir.1987):

"What was the jury to do if it decided that Penry, because of retardation, arrested emotional development and a troubled youth, should not be executed? *If anything, the evidence made it more likely, not less likely, that the jury would answer the second question yes.* It did not allow the jury to consider a major

thrust of Penry's evidence as *mitigating* evidence. We do not see how the evidence of Penry's arrested emotional development and troubled youth could, under the instructions and the special issues, be fully acted upon by the jury. There is no place for the jury to say 'no' to the death penalty based on a principal mitigating force of those circumstances." (First emphasis added.)

This Court also does not have sufficient time before the scheduled execution for review of the voluminous trial record and consideration of other serious issues involved in Mann's Rule 60(b) motion; for example:

(1) Was the *Franklin* issue properly preserved at Mann's trial? See *Selvage v. Lynaugh,* 842 F.2d at 95.[11]

(2) Is the failure of Mann to raise this *Franklin* issue in his previous petition excused by the "new law" exception to the abuse of writ doctrine?

(3) What is the effect, if any, of Mann's allegation that not only were his trial attorneys prevented from presenting mitigating evidence, "the prosecution used the inability of the defendant to offer evidence in mitigation to convince the jury that the death penalty was appropriate" by this argument:

"[Mann's attorney] could have called any witness he wanted to. He could have called his mother. He could have called his father. He could have called anybody he wanted to tell you what a nice fellow Fletcher Mann is. And they couldn't find any."

### b. *Lane v. State Issues*

Mann also asserts that constitutional issues are presented under the December 9, 1987 decision by the Texas Court of Criminal Appeals in *Lane v. State,* 743 S.W.2d 617 (Tex.Crim.App.1987). In view of the decision reached by this Court on the *Franklin* issue, it is not necessary to address the *Lane v. State* claims *at this time.* They will, however, be decided when the amended habeas petition is filed.

**11.** The state claims this issue is precluded by the "contemporaneous objection rule." However, Mann's trial attorneys did file a motion to dismiss the capital murder charge on the ground that it "denies the Defendant his Constitutional right to produce mitigating circumstances which would lessen his punishment for the charge or offense which the jury has previously found him guilty of committing." (Transcript, Vol. 1, page 74). Also, the affidavit of one of Mann's trial attorneys (see footnote 9) asserts reasons for their decision not to investigate Mann's "mental illness or disorder" or present any evidence to this effect—reasons which are remarkably similar to the problems discussed

### 4. CONCLUSION

Mann is entitled to Rule 60(b) relief on two grounds: (1) to prevent his former attorney's negligence from depriving Mann of his right to appellate review; and (2) to permit Mann to file an amended petition to raise additional claims, including the *Franklin* issue.

 The state argues that the Rule 60(b) motion should be denied because Mann can simply file a second petition for writ of habeas corpus. Although this *could* be done, it is obviously faster and more efficient for this Court and the Fifth Circuit to address *all* issues in one proceeding, and not in a piecemeal fashion.[12]

Accordingly, the motion for Rule 60(b) relief is granted. The judgment entered by this Court on October 20, 1987 is vacated. The execution of Fletcher Thomas Mann, now scheduled for June 25, 1988 is STAYED. The attorneys for Mann are directed to file an amended petition for writ of habeas corpus within thirty (30) days from the date of this opinion. The state is directed to respond to that petition within twenty (20) days from the date it is filed.

by Judge Reavley in *Penry v. Lynaugh,* 832 F.2d at 924–26.

**12.** This Court is aware, of course, that Mann must exhaust his state court remedies as to any issues that have not been presented to the Texas courts. It understands that an Application for Post–Conviction Writ of Habeas Corpus has been filed today with the Texas Court of Criminal Appeals. Again, it seems faster and more efficient for this Court to simply delay any action until the state courts have acted—rather than dismiss a *portion* of Mann's amended petition, so that there would be two appeals to the Fifth Circuit instead of one.